STATE OF IOWA, Appellee, v. HUGH WHEELER, Appellant.

**Indictment:** MOTION TO QUASH: TIME FOR FILING. Where a grand jury was reduced to less than seven members by the successful challenge of a defendant held to answer, but the court neglected to impanel an additional juror to take the place of the one challenged and an indictment was returned by the original panel, the challenged juror taking no part, defendant's objection to the organization of the jury made after the return of the indictment, by motion to set the same aside on the ground that the jury was not selected, sworn and impaneled according to law, was too late, and he was remitted to a plea to the indictment.

**Evidence:** DECLARATIONS OF CO-CONSPIRATOR: ADMISSIBILITY. The acts and declarations of a co-conspirator are not competent evidence against one charged with the crime of assault with intent to maim and disfigure, until at least a *prima facie* case of conspiracy has been made out. Evidence held insufficient to show conspiracy.

**Admission of incompetent evidence:** PREJUDICE: INSTRUCTION. Where incompetent evidence was admitted to show a conspiracy for the commission of a crime, prejudice will be presumed, and the error is not cured by an instruction in effect that for the purpose of showing a motive the State claimed a conspiracy and the jury must be satisfied from the evidence that a conspiracy in fact existed.

*Appeal from Butler District Court.*— HON. J. F. CLYDE, Judge.

TUESDAY, NOVEMBER 21, 1905.

THE defendant was convicted of an assault with intent to maim and disfigure, and from the judgment he appeals. — *Reversed.*

*Sager & Sweet,* for appellant.

*Chas. W. Mullan,* Attorney General, and *Lawrence De Graff,* Assistant Attorney General, for the State.

BISHOP, J.— I.   The defendant was charged by information, filed before a justice of the peace, with an assault with intent, etc., committed upon Mrs. Parney Ramsey, a widow living near the town of Clarksville, and upon being arrested under warrant he waived examination and was bound over to await the action of the grand jury.   At the succeeding term of the district court the defendant appeared with counsel, and after the clerk had called from the grand jury list the names of seven men, all of whom responded, one thereof was challenged by defendant and the challenge sustained.   The court ordered and directed the challenged juror to take no part in the consideration of the charge made against defendant, and thereupon the jury, consisting of the seven members, was sworn and retired.

On a following day of the term there was found and returned an indictment against the defendant, charging him with the crime for the commission of which he was bound over.   It is conceded that in voting such indictment the grand juror who had been challenged took no part.   The defendant appeared, and before plea moved that the indictment be set aside on the ground that the grand jury had not been selected, sworn, and impaneled according to law, in that, the challenge to one of the jurors having been sustained, the vacancy thereby caused was not filled, and that " the grand jury returning said indictment was composed of six members instead of seven, as required by law."   This motion was overruled, and, based thereon, the defendant contends for error.

The statute provides that the grand jury shall consist of seven members.   Code, sec. 5240.   And the concurrence of five members is necessary to the finding of an indictment.

Code, sec. 5274. In the case of a defendant who has been
held to answer for a public offense, a challenge
is allowed to the panel before the jury is sworn,
but only for the reason that it was not select-
ed, drawn, or summoned as prescribed by law.
Code, sec. 5241. Individual jurors may be challenged on
one or more of three grounds, each relating to the matter of
personal qualification. Code, sec. 5243. Now, prior to the
twenty-seventh General Assembly there was no statute pro-
vision directing in what way the impanelment of the grand
jury should proceed in cases where either a challenge to the
panel, or to one or more individual jurors, was sustained.
There was the simple provision, made by Code, sec. 5246,
that, " if a challenge to an individual juror be allowed, he
shall not be present at or take any part in the consideration
of the charge against the defendant." To supply the defi-
ciency the Twenty-Seventh General Assembly passed an act,
now appearing as Code Supp., sec. 5246, which amended
Code, sec. 5246, by adding thereto the following:

1. INDICTMENT: motion to quash: time for filing.

If a challenge to the panel is allowed, or if by reason
of challenges to individual grand jurors being allowed, or
if for any cause at any time, the grand jury is reduced to a
less number than seven, a new grand jury shall be impan-
eled to inquire into the charge against defendant in whose
behalf the challenge to the panel has been allowed, or the
panel of the jury so reduced below the number required
by law shall be filled as the case may be. If a challenge is
allowed to the panel the names of the jurors required to
impanel a new jury shall be drawn from the grand jury list.
If such grand jury has been reduced to a less number than
seven by reason of challenges to individual jurors being
allowed, or from any other cause, the additional jurors
required to fill the panel shall be summoned, first, from
such of the twelve jurors originally summoned which were
not drawn on the grand jury as first impaneled, or excused,
and if they are exhausted, the additional number required
shall be drawn from the grand jury list and the court shall,
when necessary, issue a venire to secure the attendance of

such additional jurors. The persons so summoned shall serve only in the case, or cases, in which, by reason of challenges, or other causes, the regular panel is set aside or is insufficient in number to find an indictment.

It is conceded by the Attorney General that orderly procedure, under the statute as existing at the time, dictated that an additional juror should have been called to supply the place of the one challenged. But it is his contention that it was not open to the defendant to complain of the omission after indictment found. And this contention, we think, must be sustained. " The motion to set aside an indictment can be made, before a plea is entered by the defendant, on one or more of the following grounds, and must be sustained: . . . (5) That the grand jury were not selected, drawn, summoned, impaneled or sworn as prescribed by law." Code, sec. 5319. But " the ground of the motion to set aside the indictment mentioned in the fifth subdivision of section 5319 is not allowed to a defendant who has been held to answer before indictment." Code, sec. 5321. Undoubtedly it was intended by Code, sec. 5321, to provide, as against a defendant held to answer, that all matters having relation to the organization of the grand jury should be foreclosed by the finding of an indictment. Such, indeed, is the plain reading of the section. And therefrom it follows that, whatever the irregularity in the prior proceedings, the defendant must be held remitted to a plea to the indictment.

Counsel for defendant present the argument that the provisions of section 5246 as amended must be construed as mandatory, and accordingly that, as related to the defendant, there was no grand jury, and the indictment assumed to be returned was no more than a piece of paper. Such could be said, however, if there had been a failure to swear the grand jury, or if it had been made up of persons, all of whom were aliens, or whose names were not on the grand jury list. We need not consider what would have been the effect, had the defendant interposed an objection to the sub-

mission of his case to a jury, one of whose members could not act, and such objection had been disregarded. He was present, and had the right to object, but did not do so. But, aside from the fact that one member was disqualified from acting in the instant case, there was a grand jury regularly impaneled and sworn, and there was an indictment voted by a number sufficient for the purpose, under the statute and Constitution. Moreover there has been no change in the requirement of the statute as to the number of grand jurors necessary to constitute the jury. The change has relation to the matter of filling vacancies, when, by challenges or other cause, the number is depleted. And we may concede, as contended for by counsel for appellant, that there is evidenced by the present statute an intention to provide that, as related to each case, there should be a grand jury consisting of seven active members. But this does not obviate the further rule of the statute that the objection cannot be raised after indictment. *State v. Belvel,* 89 Iowa, 405, is a clear authority for the proposition that a defect in the composition or organization of the grand jury is waived by not being interposed at the proper time. In that case the grand jury as impaneled was composed of five members only, and the objection was not raised until after judgment.

II. The offense involved in the charge made in the indictment consisted in the throwing of a chemical or alkali substance into the face and upon the person of Mrs. Ramsey.

2. EVIDENCE: declarations of co-conspirator: admissibility. And this is shown to have occurred between 9 and 10 o'clock in the evening, and by some person who came to the residence of Mrs. Ramsey, called her to the door, threw the substance, and disappeared without being recognized by her. The evidence relied upon to connect the defendant with the offense is entirely circumstantial. It appears that defendant and his wife were living apart; she making her home with a woman named Raines in Clarksville, and he occupying rooms and boarding elsewhere in the town. Defendant was acquainted

with Mrs. Ramsey, but no trouble had ever existed between them.

To establish motive for the commission of the offense charged, and over objections by defendant, the state was permitted to introduce evidence tending to show that the defendant and one Jerome V. Brown, also residing in Clarksville, associated with each other intimately, and were together about town on the night of the commission of the offense in question, and as to what was said and done by them, and that Brown entertained ill feelings toward Mrs. Ramsey, growing out of her refusal to receive attentions from him, and the relations between them were gone into in detail. Evidently it was the theory of the prosecution that the two men — the one smarting from his repulse by Mrs. Ramsey, and the other displeased because the Raines woman was harboring his wife — had concluded as between themselves to get revenge through the medium of lye throwing; that the better to avoid detection defendant should make the assault upon Mrs. Ramsey and Brown upon the Raines woman.

At the close of the evidence for the state the defendant moved to strike out all the testimony of the witnesses thus introduced over his objections, and such motion was overruled. The objections and the motion made were based upon the well-understood rule of law that acts and declarations of an alleged co-conspirator are not receivable in evidence until a *prima facie* case of conspiracy at least has been made out; that in the instant case there was no competent evidence whatever tending to prove the essential fact of conspiracy. We think the motion to strike should have been sustained.

Regarding the evidence as having been offered to prove the fact of conspiracy, it was too remote. In our view, it did not even tend to prove that an agreement in respect of the commission of the offense in question had been entered into. We do not say, of course, that in making proof of the whereabouts and the acts and conduct of defendant the

state was bound to omit all reference to Brown. But the association between defendant and himself, however intimate, in the absence of other evidence — and there is none — could amount to no more than proof of opportunity. Beyond that there was room for no more than a suspicion that within the possibilities such an agreement may have been entered into. Neither the trial court nor counsel were in doubt about the rule as we have stated it. The situation was that the evidence was allowed to go in under a statement of the county attorney that proof of the agreement would be forthcoming — a practice not subject to general commendation, to say the least. But in any event, when it became apparent that an agreement had not been *prima facie* established, the evidence should have gone out.

Now, we cannot say that the fact, as shown, that defendant and Brown were intimate associates, coupled with the fact that the latter was illy disposed as against Mrs. Ramsey, especially in view of the details, did not have the unguarded effect to lead the minds of the jury to the conclusion, which in turn entered into the verdict, that an agreement between them did in fact exist, pursuant to which the crime was committed; and this, notwithstanding the want of further evidence on the subject. Indeed, by the ruling of the court, the jury was given full authority to consider the evidence, and this they could not well have done as related to any other subject than as tending to support the theory of an agreement as entertained by the county attorney. Error being made to appear, prejudice will be presumed, is the rule. And there is nothing in the instant record, taken as a whole, which can be said to rebut the presumption thus arising. The giving of the seventh instruction did not overcome the error. That instruction was as follows: " For the purposes of showing a motive for the commission of the crime charged in the indictment, the state claims that Jerome V. Brown had ill will toward Parney Ramsey on and before July 30, 1904,

8. ADMISSION OF INCOMPETENT EVIDENCE: prejudice: instruction

and that he procured this defendant to commit the crime with which he is charged.     The state must satisfy you from the evidence that said Brown did in fact procure this defendant to commit the crime in question before it can derive any benefit from this claim," etc.     The instruction assumes that there was evidence tending to prove an agreement, whereas the record is barren of any such.

Other errors relied upon are not likely to arise upon a retrial of the case.

For the error pointed out, the judgment must be, and it is, *reversed*.