## TOM HENLEY v. THE STATE.

### No. 4438.   Decided May 2, 1917.

**1.—Murder—Evidence—Bill of Exceptions.**

Where it appeared from the record on appeal that the testimony claimed to have been rejected was, in fact, admitted in evidence, there was no error, although the bill of exceptions was approved without qualification or explanation.

**2.—Same—Evidence—Circumstantial Evidence—Motives.**

Where, upon trial of murder, it appeared that the difficulty arose from the conduct of deceased's daughter and that of deceased toward the defendant, the defendant should have been permitted to introduce in evidence the circumstances surrounding him leading up to the killing of the deceased, which included the conduct of the daughter of the deceased and the conduct of the deceased toward the daughter of defendant, etc.

**3.—Same—Requested Charges.**

Upon trial of murder, there was no error in refusing certain requested charges of the defendant which were not applicable to the facts of the case.

**4.—Same—Evidence—Selfserving Declarations.**

Upon trial of murder, there was no error in excluding the testimony of defendant's wife as to what he said to her soon after he killed deceased, to the effect that he killed him in self-defense; this was not res gestae.

**5.—Same—Evidence—Impeaching Testimony—Opinion of Witness.**

The admission of the testimony of defendant's son could not be impeached by a State's witness by opinion testimony, and said State's witness should not have been permitted to testify that defendant's son stated to him that he knew that his father, the defendant, was going to kill the deceased. Following Drake v. State, 29 Texas Crim. App., 265.

**6.—Same—Evidence—Reputation of Defendant—Cross-examination.**

Where, upon trial of murder, defendant introduced a number of witnesses who testified that his general reputation as a law-abiding man was good, the State should not have been permitted, on cross-examination, to ask these witnesses whether they did not know about defendant shooting three times at one of his own sons, and of some other claimed unlawful acts by defendant without first showing that defendant had committed such acts, and first laying a proper predicate.

Appeal from the Criminal District Court of Dallas.   Tried below before the Hon. W. L. Crawford, Jr.

Appeal from a conviction of murder; penaltv twenty-five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*E. B. Hendricks* Assistant Attorney General, for the State.

PRENDERGAST, JUDGE.—Appellant was convicted of murder and his punishment assessed at twenty-five years in the penitentiary.

Only a brief general statement is necessary. The deceased, J. S. Donaldson, and appellant lived with their respective families near one

another, close to Dallas. Deceased had and ran a store in part of his residence. He was a drinking man, and when drinking or drunk was more or less insulting to others and made threats of personal violence towards others. He had living with him a daughter, whom Mrs. Donaldson testified had several years before then married, but had separated from her husband. Other witnesses in the same community, and appellant, it seems, did not know of her previous marriage, seeming to regard her as not having been married. What testimony was introduced along this line indicated that at and shortly prior to the killing, this daughter was pregnant, and this appears to have been noticed by appellant and others. The testimony would also indicate, or at least such an inference could well be drawn therefrom, that her pregnancy was caused, not by her husband, from whom she had been some time separated, but by some other man in illegitimate intercourse. She was a young woman, perhaps about, or not much older than twenty years.

Appellant also had a daughter living with him, named Mrs. Marie Pool, some eighteen or twenty years old, who had some four years before the killing married, and lived some years with her husband, by whom she had a child. She and her husband had separated some six months before the killing, and she went to her father's to live. Appellant, some week or two before the killing, on different occasions, had left home to work for others, and remained away from one to two or three days on these occasions. When he returned home he found that his daughter, Mrs. Pool, was not at his home and ascertained that she was at deceased's, or had been. Appellant testified that he had been told that deceased was his worst enemy, and one of his sons testified deceased had made a threat against appellant to the effect that when he was threatening to kick this son off of his premises or the road near thereto and the son stated to him in substance that he would tell his father and see if he would kick his father off, deceased replied: "All right, go down and get your daddy; I would like to get a good chance at him anyhow." Appellant also contended that deceased kept intoxicating liquors at his said store and residence and sold it and that deceased's said daughter drank such liquor and solicited young men who came there, to purchase it for her to drink. Appellant was very much opposed to his daughter Marie going alone to deceased's or staying there with them at any time, and when he found upon his return home that she was there, or he thought she was, he would inquire there for her, and that the deceased and his family knew that he opposed his daughter's staying with them. He also sought to show that a man by the name of "Wine Joe" ran a "chicken garden" right near deceased's at which he claimed intoxicating liquors were sold and drunk, and that his "garden" was frequented by immoral women and that said deceased's daughter frequented it and drank liquor therein, and perhaps disported herself in such a way as to at least reflect upon her chastity. Appellant also testified that on an occasion a few days previous to the killing he had heard that his daughter Marie was at de-

ceased's and met him and inquired about it, when deceased said he didn't know a G— d— thing about it and cared less. Appellant's claim was that deceased was harboring his daughter at his house for improper purposes, and he regarded deceased and his said daughter as improper associates for her, and he was anxious, and trying to keep her away from them.

On the morning of the killing appellant had returned home, after an absence of a day or two or three and found his daughter Marie absent from home and concluded she must be at deceased's. He thereupon looked for her there, and some distance from deceased's saw that she was there. He then went to deceased, who was working in a peanut patch near his place, to inquire about his daughter to ascertain why deceased was harboring her at his house, and that when he inquired if his daughter was at his house, deceased got mad and replied to him in substance as he had on the previous occasion, and immediately assaulted him with a hoe in such a manner as that appellant claimed clearly justified killing deceased in his own self-defense, and that he thereupon in self-defense shot and killed him.

Appellant has several bills of exception showing that the State objected to and the court excluded various items of testimony by different witnesses, by whom he sought to show the said threat against him to his son and the deceased's threat to kill a man by the name of Lear and several other items of testimony. The court allowed and approved these bills without any qualification or explanation. As a matter of fact, the statement of facts shows that much of this testimony was actually admitted and in evidence before the jury. We do not care to take any of these matters up and discuss them. The record shows them. Why such bills were allowed when the record shows the testimony was actually admitted and properly so, we can not understand.

There were other items of testimony, however, which were excluded and proper bills allowed. Without taking these up separately, we will pass upon the questions raised thereby.

In our opinion, all of the testimony offered by appellant which was excluded as to the said "Wine Joe's" place and the course of conduct carried on therein and all of deceased's daughter's conduct thereat should have been admitted. Also all that testimony which was excluded wherein appellant sought to show the conduct of deceased's daughter at his residence as to her drinking intoxicants and her soliciting the purchase of intoxicants for herself by men who came there, should have been admitted. Particularly the testimony of Banzett, which was excluded, shown by appellant's bill 19. The court erred also in permitting the testimony of probation officer Chick to the effect that said Banzett had been convicted as an incorrigible child, as shown by appellant's bill 26. Banzett could not be impeached by showing conviction in any such matters. The proposed testimony of appellant by his daughter Marie to the effect that deceased sent word by her to him, which she communicated, that he, deceased, would not permit him to

take her away from his house, as shown by bill 17, should have been admitted. The insulting conduct of deceased towards appellant's daughter, as shown by bill 16, should have been admitted. The proffered testimony by appellant, shown by bill No. 20, that deceased had told him that he, deceased, visited said "Wine Joe's" "chicken garden," drank with various women there, and of the women sitting in his lap at said place and he having a good time with them generally, should also have been admitted. All this excluded testimony was, admissible so that the jury could understand the circumstances surrounding appellant leading up to the killing and which operated on his mind when he killed deceased, and thereby be better able to properly assess his punishment, if they found him guilty. Also it might have raised a lower grade of homicide than murder.

There was no error in refusing those special charges of appellant which the court refused.

As presented by appellant's bill 15, we think the court's action in excluding the testimony of appellant's wife of what he said to her soon after he killed deceased to the effect that he killed deceased in self-defense, was not res gestae and was properly excluded by the court.

Otis Henley, one of appellant's sons, was a very material witness, and gave material testimony for him. The State was permitted to have Mr. Woods testify in impeachment of Otis Henley to the effect that Otis stated to him on a certain occasion soon after the killing that he, Otis, knew that his father, appellant, was going to kill Mr. Donaldson. The admission of such impeaching testimony as this has been uniformly held error by this court since the opinion in Drake v. State, 29 Texas Crim. App., 265.

A large number of witnesses testified that the general reputation of appellant as a peaceable, law-abiding man was good. In cross-examination of some of these the State asked, in substance, if the witness did not know about appellant shooting three times at one of his own sons and of some other claimed unlawful acts by appellant. It is permissible to ask witnesses on cross-examination under such circumstances about such specific acts of an accused, but it must be shown that he had committed the act about which the witness is asked, not a mere asking if the witness didn't know that the accused had committed such act, without as a matter of fact showing that he had committed the act. The court, if such questions arise on another trial, will be governed in the admission of such testimony by requiring the proper predicate to be laid before such questions are asked and answered. Particularly does appellant's bill 31 show error along this line. That bill shows, without any kind of testimony having been introduced that appellant had ever committed such an act that the State was permitted to ask a witness on cross-examination: "Did you ever hear of this appellant drawing a long, keen bladed knife and attempting to cut the throat of a man by the name of Rawlins in the Lancaster community?" This question, and answer to it, should not be permitted on another trial

without first laying the proper predicate to show that appellant had committed such an act.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*