GEORGE KESSEL, Appellee, v. W. J. MURRAY et al., Appellants.

**GUARANTY:** Corporate Director as Guarantor—Personal Liability. A
1   director of a corporation who guarantees the duly executed promis-
     sory note of the corporation may not escape personal liability on
     his written guaranty by adding the word ''director'' after his
     signature.

**BILLS AND NOTES:** Joint Indorsers—Liability. The order of lia-
2   bility of *successive* indorsers of a promissory note is not the order of
     liability of *joint and several* indorsers or guarantors. In the latter
     case, the *last* indorser or guarantor may, after discharging his obli-
     gation, enforce nothing more than contribution from the other joint
     indorsers.

*Appeal from Hardin District Court.*—H. E. FRY, Judge.

JANUARY 8, 1924.

ACTION triable in equity, instituted by plaintiff, as payee,
against W. J. Murray, as indorser, to recover on a certain
promissory note in the sum of $7,500, executed by the Iowa Oil
& Gas Company, in which corporation the defendant Murray
was a stockholder and director, and on which note four other
directors signed with Murray, as indorsers, and against whom
the defendant filed a cross-petition, praying that the rights of
all parties to the note be determined; that he be decreed to have
no personal liability on the note; and for reformation. The
opinion sufficiently states the pleadings and the facts. *Affirmed*
on defendant's appeal and *reversed* on the appeal of the de-
fendants in the cross-petition.

*F. J. McGreevy* and *Lundy, Peisen & Soper,* for appellants.

*Aymer D. Davis,* for appellee.

DE GRAFF, J.—This appeal concerns itself with two primary
propositions: First, the liability of the defendant Murray to
the plaintiff; and second, the liability of certain defendants in

1. GUARANTY: cor- the cross-petition of Murray to reimburse him
porate director  in the event that he is compelled to pay the obli-
as guarantor:
personal liability. gation in suit.   Defendant Murray is the appel-
lant as to plaintiff Kessel, and appellee as to defendants on his
cross-petition.

One phase of this appeal presents a legal question; the
other, primarily a question of fact.  At the outset, it is quite
important to have in mind the nature of the action and the
salient facts disclosed by the proofs.  Plaintiff, as payee, insti-
tuted action against Murray, as obligor on a certain promissory
note "jointly and severally" payable, in the sum of $7,500,
executed by the Iowa Oil & Gas Company, a Delaware corpora-
tion, with its principal place of business at Eldora, Iowa.  On the
back of the note these words are found:

"For value received I, or we, hereby guarantee the pay-
ment of the within note at maturity or at any time thereafter
together with a legal attorney's fee if suit be instituted thereon,
waiving demand, notice of nonpayment and protest."

This contract of indorsement was signed *seriatim* by Joe
Fagg, C. M. Haas, B. T. Oldham, W. J. Murray, and R. W.
Haas.  These men were the directors of the Iowa Oil & Gas
Company, but all signed as individuals, except the defendant
Murray, whose signature was followed by the words, "Director.
Iowa Oil & Gas Co."  Upon default of payment of the note,
this action was commenced against Murray alone, who answered,
and also filed a cross-petition against the other four directors
of said corporation for indemnity in the event that he was com-
pelled to pay the note.

Briefly stated, Murray contends that, as against plaintiff
Kessel, he is not personally liable on the note and indorsement,
and as against the other indorsers, who are made joint defend-
ants on his cross-petition, that there was an express oral agree-
ment between them that no personal liability should be created
in the signing of said note, "but that such writing was to be in
such manner and form that no personal liability should be
created against him on account thereof," and that thereupon,
said note was indorsed by him as shown on the back thereof.  In
effect, Murray pleads as to the other obligors a contract of in-
demnity.

The trial court determined that the plaintiff, Kessel, is entitled to recover against the defendant Murray for the amount of said note, computed according to its terms; but that the defendant Murray is entitled to recover over against the indorsers Joe Fagg, C. M. Haas, and B. T. Oldham the full amount of the judgment rendered against him in favor of the plaintiff, "upon condition, however, that execution shall not issue against said defendants or any of them in favor of the defendant Murray until he has paid to the clerk's office for the plaintiff the amount of such judgment and costs." Before proceeding to the discussion of the legal principles involved, a brief recital of the facts is necessary.

About the 15th day of February, 1920, the Iowa Oil & Gas Company purchased an 8-acre tract of land in a Texas oil district for $30,000, and made the initial payment of $10,000. The balance of the purchase price was to be paid by February 26, 1920. The company agent in Texas drew a sight draft on the company for the balance, and wired the secretary to this effect. On the 27th, a meeting of the board of directors was called at the secretary's office, which was attended by the five directors whose names appear on the contract of indorsement. At this meeting it was arranged by them to borrow $7,500 from Mr. Murray, who volunteered to get $5,000 more from George P. Keir of San Diego, California, which was subsequently secured. This left a balance of $7,500, and it was suggested that this might be obtained from Dr. Kessel, of Cresco, Iowa. Thereupon, the board directed R. W. Haas to telephone him. At this meeting it is fairly shown that all the directors agreed that they would sign the note to Dr. Kessel for $7,500. Murray denies he ever agreed to sign the note, but states that he knew he was expected to sign it, and admits that he did sign it in the form that the note now bears. Telephone communication was had with Dr. Kessel, and he was informed by Mr. Haas that there had been a meeting of the board of directors, and that the company had to raise the money to meet the sight draft, and if the company could raise the $7,500 at Cresco, the directors would indorse the note. Nothing was said to Kessel in that conversation about Murray, and this was the only conversation prior to the execution of the note and the delivery of the draft

by Kessel for $7,500, which was received by Mr. Haas with in- structions to have the note indorsed under the agreement as telephoned him, and the note returned to him. Mr. Haas wrote the note, stamped it, and requested Secretary Huston to sign it as secretary, and have the directors sign it, as agreed. The secretary was further told that, as soon as these details were arranged, that he (Haas) would turn the draft over to him for the use of the corporation. Haas was informed later by Huston that the note had been indorsed, whereupon Haas handed the draft to Huston, took the note, signed it himself, and mailed it to Dr. Kessel. Haas testifies that nothing was said at that time about any objections on the part of Mr. Murray, or of any exemption from personal liability; and it was not until sometime thereafter that Haas learned that Murray was claiming that he was not personally liable on the note. He further testified that he had no authority to act for Dr. Kessel in respect to the note, other than stated in the letter when the draft was sent him. He called Dr. Kessel by phone, upon request of the board of directors, and gave the doctor the information as directed by the board. Mr. Murray never advised Kessel in any manner that he would not be personally liable, nor did Kessel learn, until a short time prior to the suit, that Murray claimed he was not personally liable on the note. It is also shown that Murray never had authority from the board of directors to sign the company's name to any paper, or any authority to sign as a director; and no such claim is made by Murray. It further appears that a meeting of the full board was had, four days after Murray signed the note, for the purpose of ratifying the act of the directors in borrowing this money from Dr. Kessel. Nothing was said at this meeting about the personal liability, or freedom thereof, of Murray. Murray testifies that, when the note was presented to him for his signature, he understood he was expected to sign it, and that he knew that the note was for the purpose of carrying out the prior act of the directors. He never told any of the directors that he did not intend to be personally liable upon the note. He does claim that, by reason of telling the secretary of the company (who was not a director), that he would not be personally bound, he was released from liability.

I. What is the liability, if any, of defendant Murray to the plaintiff? Is Murray in a position to dispute his liability on the note in suit? The corporation was the maker of this note, and its name was signed by its secretary on the face of the note. This completed the instrument, and as such it was delivered to the payee, and the maker in consideration thereof received full value. How could Murray, by adding the word "Director" after his name, bind the company in any other manner than it was then bound? The answer is obvious. If Murray's signature did not impose a personal obligation, then it meant nothing, and he made no contract of any kind or character between himself and plaintiff. The parol-evidence rule may not be invoked for the purpose of proving that no contract was entered into or intended. *Geneser v. Wissner,* 69 Iowa 119; *Berry v. Gross,* 192 Iowa 300. He agreed to pay, by signing. There is no plea of conditional delivery, and no evidence supporting such theory. That he did "not intend to pay" is incompetent and legally meaningless. *Klemm v. Weil,* 194 Iowa 1073; *City Dep. Bank v. Green,* 130 Iowa 384; *Heffner v. Brownell,* 75 Iowa 341; *Evans v. Burns,* 67 Iowa 179; *Blumer v. Schmidt,* 164 Iowa 682. Murray, as a single director, had no power or authority to contract for the corporation. Directors are without authority to act in a representative capacity, except as a board of directors. When Murray signed in a representative capacity, he added nothing whatsoever to the indorsement of the note. In *Taylor v. Reger,* 18 Ind. App. 466 (48 N. E. 262, 63 Am. St. 352), it is said:

"When the corporate name of Pendleton Window Glass Company had been subscribed to the note in suit, by 'B. F. Aiman, President,' such signature bound the corporation, and the signing of the names of the appellants, as directors, added no force or effect to it. Under the circumstances, we must regard the word 'Directors,' opposite the names of the appellants, as merely *descriptio personae.*"

This case was approved in *Flick v. Jordan,* 74 Ind. App. 314 (129 N. E. 42), and in the opinion it is said:

"We can see no purpose in having the directors of the company join in the indorsement in the manner in which they did; for, if they only indorsed in a representative capacity, they

added nothing whatever to the indorsement of the note, it being sufficiently indorsed to bind the company by its president. * * * The corporate signature was complete without the signature of any director.''

See, also, *Hately v. Pike,* 162 Ill. 241 (44 N. E. 441).

When Murray signed, he was presumed to know the law, and was presumed to know that he could not. sign as a director in a representative capacity; and, having signed in the manner in which he did, he incurred a personal obligation. Incidentally it may be stated that he prayed for a reformation of his contract; but there are neither equities nor proofs that would justify a reformation. It would simply result in a cancellation. There was no fraud. If a mistake was made, it was not mutual. The indorsement was understood by the payee to mean but one thing, and this was predicated on information given by the parties with whom he was dealing, and to whom he made the loan. The agreement is unequivocal and unambiguous, and does not call for rules of interpretation and construction. Murray's contention, reduced to simplest terms, is that he did not sign in a way to make him personally liable, and therefore his signature meant nothing. We cannot accept this viewpoint. Murray was not ratifying anything. There was nothing to ratify. His signature as director was of no consequence. *Savings Bank v. Central Market Co.,* 122 Cal. 28 (54 Pac. 273). The court did not err in holding the defendant Murray personally liable to the plaintiff.

II. What is the liability, if any, of the joint obligors of Murray to reimburse him? Upon what theory is defendant Murray entitled to indemnity, under the pleadings and record in this case? Is he entitled to more than contribution? Before making answer, it is well to clarify the legal atmosphere surrounding this case. It is immaterial what terminology is used in describing the contract which Murray signed. It was a contract expressing a joint and several obligation, and we prefer to call the signers joint indorsers. Furthermore, the order in which their names appear under the contract of indorsement is immaterial, and does not determine the order of liability *inter se.* Indorsers are liable in the order of their signatures, unless they have

2. BILLS AND NOTES: joint indorsers: liability.

agreed otherwise, under the provisions of our Negotiable Instruments Law. Section 3060-a68, Supplement, 1913. Neither the law merchant nor the Negotiable Instruments Act attempted or attempts to prescribe or determine the rights of joint indorsers among themselves. *Owens v. Greenlee*, 68 Colo. 114 (188 Pac. 721); *Weaver-Dowdy Co. v. Brewer*, 127 Ark. 462 (192 S. W. 902); *Merchants' Tr. Co. v. Bentel*, 10 Cal. App. 75 (101 Pac. 31). The statute, in fixing the order of liability, contemplates successive negotiations of the instrument and successive indorsements. In the instant case, there was an express written agreement of joint and several liability. Murray seeks to recover from his co-indorsers upon a pleaded express oral agreement, of which there is not sufficient proof. All of the indorsements were made at about the same time. They were not indorsers in succession. They signed their names in order to borrow money for a corporation, and they contemplated a joint and several individual liability. The order of signing is a mere incident. No other construction can be placed upon the record before us. It was a contract coextensive to all, and of coequal liability. Each signed on condition that the others sign. There was no other thought on the part of the signers.

What is the basis for indemnity which is, in legal effect, the prayer of defendant Murray? Indemnity rests on a contract. Contribution is an equitable right, growing out of the relation of the parties, and is not dependent upon any contract. It arises from the circumstances of the case and the legal situation of the parties. The co-indorsers of Murray could not be liable to him on contract without their consent, knowledge, or intent. Murray well knew the arrangement that was made with respect to the borrowing of the money from Kessel; and pursuant to that arrangement, three of the directors had signed, prior to the time of Murray's signature. The directors knew that the money could not be secured from the Eldora bank or from Kessel without the individual guaranty of the directors. The corporation was financially embarrassed. They all knew that the oil ship was about to sink, and stood ready "to kiss her burial." True, when Murray signed the contract of indorsement, he informed the secretary, who presented the note to him for signature, that he did not intend to be personally bound by

that signature; to which the secretary replied that "he could do as he pleased." He did sign. We cannot hold, however, that the opinion expressed or the statement made by Murray can set aside the agreement fairly and honestly made in effectuating a loan to save the sinking ship. Murray had the same control over the note when he signed it as his codirectors did, three of whom had assumed the burden at that time. These five men stand jointly liable, under the terms of a simple, unambiguous contract. They must share the burden equally. No other rule of liability would be fair or equitable. The decree entered on the cross-petition of the defendant Murray must be reversed, with direction to enter a decree fixing the liability pro rata among the indorsers of the note in suit. Cause is *affirmed* as to the defendant Murray, and *reversed* with direction on the appeal of the defendants named in the cross-petition.

PRESTON, STEVENS, and VERMILION, JJ., concur.