STATE OF IOWA, appellee, v. DONALD GUY COLLINS, appellant.

No. 48560.

(Reported in 69 N.W.2d 31)

Maʀᴄʜ 8, 1955.

Rᴇʜᴇᴀʀɪɴɢ Dᴇɴɪᴇᴅ Maʏ 6, 1955.

Verne Lawyer and Don Hise, both of Des Moines, for appellant.

Leo Hoegh, Attorney General, Raphael R. R. Dvorak, Assistant Attorney General, Clyde E. Herring, County Attorney, Polk County, and James A. Lorentzen, Assistant County Attorney of Polk County, all of Des Moines, for appellee.

SMITH, J.—On June 26, 1953, shortly after 9 o'clock p. m., defendant was stopped and arrested while driving his automobile in Des Moines, Iowa. Thercafter, being charged under section 321.281 with operating a motor vehicle while intoxicated, he pleaded not guilty. He was convicted and appeals from the resulting judgment.

The appeal presents but one claimed error—improper cross-examination of defendant, eliciting the fact that he had once been in Eldora Training School for Boys. We need not set out any details of the evidence bearing on his alleged criminal conduct.

The cross-examiner first elicited that defendant was born in Dallas Center in 1922 and left there when he went into service in 1942. After some examination bearing on his contention that he was not intoxicated when arrested but suffering from a physical attack by some unknown assailant the prosecutor commenced to question him as to where he had lived and whether he had been "away from home." Two pages of the record are devoted to this part of the cross-examination. The witness said he had been "in the Dakotas for awhile with a cousin of mine", had visited his "sister in Arkansas, Pine Bluff", etc.

At one point the cross-examiner replied to an objection as to immateriality: "For the purpose of examination of the credibility of the witness."

Finally the witness was asked point-blank: "You don't remember any place in particular you were in 1940 other than visiting at your sister's and maybe in the Dakotas?" Objection was urged which the court overruled, saying "Ordinarily the credibility can be gone into." The witness then answered: "I was in Eldora Training School for Boys."

Prompt motion was made to strike the answer and the court was asked to admonish the jury to disregard it. The court said: "I assume that the County Attorney knew exactly what the answer was going to be" and at once recessed the case. After

recess the court, not in the presence of the jury, announced: "I will entertain a motion for mistrial." After argument, however, the defense motion for mistrial was overruled.

I. The question presented is a narrow but extremely troublesome one. Code section 622.17, Iowa Code, 1954, provides a witness may be interrogated as to his previous conviction of a felony. That statute has no bearing here.

Section 781.13, Iowa Code, 1954, is more in point. It permits cross-examination of a defendant ("when he testifies in his own behalf") but warns that "the State shall be strictly confined therein to the matters testified to in the examination in chief."

The sole purpose of the cross-examination expressed by the prosecuting attorney here was to test the credibility of the defendant as a witness. It clearly was not to contradict or disprove anything he had testified to on direct examination. The record does not show that he testified on his examination in chief to anything as to his past history except: "I am 31 years old. I was in service from 1942 to 1946 and served in the South Pacific. I am employed at the Iowa Pack and have worked there seven years."

The rest of his testimony on direct examination concerned the events preceding and leading up to his arrest: "I worked until noon and then went home. I had a fishing trip planned for the next day and I was going home and get my fishing equipment ready to go. I was going with Howard Mattix and Gene Fees who both work at the Iowa Pack where I am employed." He then tells of the visit of himself and wife at the Mattix home that evening: "I had nothing to drink with the Mattixes and left there sometime after 7:30 to go see Gene Fees. * * * I met Mr. Fees and I drank three bottles of beer and left. * * * Previous to that I had had nothing to drink.

"When I left him I walked out the door and the main thing I know is that somebody hit me up side of the head and I was on the sidewalk and I don't ——. After that I don't know really what did happen. I don't know what I was hit with. I suffered some cuts and scratches on my face and my left hand and I had one pretty deep cut on my chin and when I arrived down at the police station it was still bleeding. Whoever hit me just dis-

appeared after that. He might have mistaken me for somebody else or something. That is the only thing I can figure out. I have never been in any trouble. I don't make a habit of going over there in that portion of town.

"The next thing that I really remember I was stopped on East 9th by the police officers."

The rest of his testimony in chief gives his explanation of the presence of beer bottles in his car and something of his physical and dental condition since serving in the Pacific.

The only possible legitimate purpose for eliciting on cross-examination the fact of his residence at Eldora was to suggest to the jury a reason (in addition to his obvious interest in the outcome of the trial) for disbelieving defendant's testimony in chief —in other words, to question his credibility *as a witness*. But unfortunately, back of that was the possibility of discrediting him *as a defendant* and making his conviction more probable. Such a possibility when a defendant becomes a witness was doubtless the reason for Code section 781.13, supra. See State v. Yarham, 206 Iowa 833, 837, 838, 221 N.W. 493.

Defendant was born in 1922. His "residence" in the Training School was in 1940, thirteen years before trial of the instant case. He was then approximately eighteen years old. The only explanation of his being there is given in his redirect examination: "My father and mother separated when I was five. * * * My father was granted custody of me and I was only supposed to stay with my mother on week ends. As the years went on * * * I stayed with my mother more than I was supposed to and my dad had me paroled up in Miller, South Dakota, to my cousin up there. I was supposed to stay with my father but I was not doing that. My father took me up to Dakota and I got home again. * * * the sheriff picked me up in Adel * * * and they sent me to Eldora. It was the result of disobeying my father—just not living with him when I was supposed to."

No instruction was given or asked concerning this testimony elicited on cross-examination of defendant. The record as it stands does not indicate any serious state of dependency or neglect under section 232.2, Iowa Code, 1954, or any delinquency under Code section 232.3, as the reason or purpose of his commitment. Undoubtedly a boy may be sent to the Training School

under circumstances which, if understood, reflect no discredit but only misfortune. Nevertheless we cannot close our eyes to the general belief, which attaches some stigma to the commitment.

II. The State cites State v. Wasson, 126 Iowa 320, 323, 101 N.W. 1125, 1126, in which case the defendant, charged with robbery, on cross-examination was asked questions as to his former residence and occupation "which elicited information from which it might be inferred that he had been an inmate of the reform school at Eldora." The opinion held that "while it was not competent to show that fact by direct testimony, the State had the right to cross-examine the witness on both subjects [former residence and occupation], although it might tend to disgrace and discredit him", citing "State v. Pugsley, 75 Iowa 742."

Nothing appears as to the length of time that had elapsed since the "inferred" commitment or as to the reason for it. We are left to "infer" it was sufficiently recent and of such a nature as to make it material and relevant to the question of the defendant's credibility as a witness.

The Pugsley case cited shows the cross-examination complained of there referred to an existing jail imprisonment of the witness (not the defendant) awaiting trial on an indictment for larceny. It was properly held there that the fact elicited did bear on the credibility of the witness. No question of remoteness was involved in either case.

The State cites numerous cases announcing unquestioned general principles as to cross-examination of witnesses to test their memory or impeach their credibility. We have no quarrel with the propositions they announce. But they are not helpful to us here.

Nor are the cases cited by defendant from other jurisdictions decisive. Henley v. State, 81 Tex. Cr. Rep. 221, 195 S.W. 197, held it error to show by probation officers that a witness had been convicted as an incorrigible child. No question of cross-examination of the defendant on trial was involved.

In Witt v. State, 123 Neb. 799, 244 N.W. 395, the Nebraska Supreme Court held irrelevant testimony that two of the State's witnesses had been committed to the State Training School for Girls. Again no question of cross-examination of defendant was involved.

Daxanbekler v. The People, 93 Ill. App. 553, 555, the witness was asked directly on cross-examination, " 'Were you ever in the reform school in the state of Iowa?'" The appellate court upheld the trial court in sustaining objection to the question: "It is only conviction of an infamous crime which can be shown for the purpose of affecting the credibility of a witness."

We are mindful that the trial court has a considerable discretion in passing on the materiality and propriety of cross-examination designed to test the memory and credibility of witnesses. But in a criminal case where the witness is the defendant on trial, our statute (Code section 781.13) already cited provides (what probably would be the rule anyway) that *the State shall be strictly confined to the matters testified to in the examination in chief.*

We think there was abuse of judicial discretion here. The commitment to what is still thought of as the "Reform School" was too remote in time to furnish any reliable criterion by which to test the credibility of the witness and was not proper cross-examination as related to the testimony in chief.

III. Was the error prejudicial? Were the proceedings civil instead of criminal, or the witness not the defendant, we might easily answer "No." But the duty of the court to protect the right of a defendant charged with crime to a fair and impartial trial should give us pause. Knowing lawyers as we do we indulge the suspicion that had the witness not been the defendant the prosecutor would not have bothered to go into his teen-age history. (Mindful of a prosecutor's problems however, we say it without implying censure.) The reaction of the trial court was significant: "You have no right whatsoever to show this man was in Eldora; * * * that is prejudicial error, in my opinion. I don't think it can be cured even by admonition at this point."

It is possible there was no prejudice but we prefer not to speculate on it. Had the indictment been for murder such speculation would be unthinkable, but the legal principle here must be the same. The defendant's rights and our duty are the same, regardless of the nature of the charge.

"Error being made to appear, prejudice will be presumed, is the rule." State v. Wheeler, 129 Iowa 100, 106, 105 N.W. 374,

376; State v. Nugent, 134 Iowa 237, 240, 111 N.W. 927, 929. In the latter case it is said: "In criminal cases only technical errors which do not affect the substantial rights of the defendant are to be disregarded." In State v. Asbury, 172 Iowa 606, 613, 154 N.W. 915, 918, Ann. Cas. 1918A 856, it was said "error is presumed to be prejudicial", and the case was reversed because of error in cross-examination of defendant thereby eliciting matter not inherently inadmissible.

██ ██ It must be conceded however our court has no fixed rule that prejudice will *always* be presumed, nor should it have. But it is fair to say that in a criminal case where the error pertains to a matter calculated to arouse prejudice against defendant, we should be cautious in holding it to be nonprejudicial. "Whether the error in a given case shall be regarded as harmless on appeal may often depend on the circumstances of the particular case rather than on any definite rules of law." 24 C. J. S., Criminal Law, section.1887, page 841. And "errors which might otherwise be regarded as harmless and unimportant may not be so considered in-close cases." Idem, page 843.

It must be said the evidence of guilt here is not strong. The officers by whose testimony defendant was convicted concede that while he was driving without lights, his car was not weaving or being driven improperly except that one says "he was traveling at a faster rate of speed than the speed limit." The same witness says "I don't believe he ran a stop light while we were following him."

The testimony of the witnesses as to defendant's bloody and disarranged condition when arrested tends to support his testimony that he had been attacked and beaten before entering his car. One says "There was no question in my mind that night but what somebody had apparently roughed up Mr. Collins to some extent." The other said "he looked like he had just come out of a fight." They base their opinion that he was intoxicated on the smell of alcohol on his breath and his physical appearance and unsteadiness in his walk, though, as to the latter, one testified "his walk was fair."

██ We are not arguing the guilt or innocence of defendant nor the sufficiency of the evidence to go to the jury. We do say

the evidence of guilt is not so strong as to justify a pronounce-
ment that the error in cross-examination was without prejudice.

For the reasons stated we think the ends of justice will be
best served by a reversal and it is so ordered.—Reversed.

WENNERSTRUM, C. J., and OLIVER, MULRONEY and HAYS,
JJ., concur.

GARFIELD, BLISS, THOMPSON, and LARSON, JJ., dissent.

GARFIELD, J. (dissenting)—I cannot concur in the majority
opinion. I think the State's cross-examination of defendant does
not entitle him to a reversal. There is no claim the evidence of
guilt is insufficient. Nor do his able and experienced counsel sug-
gest it is not strong. The only error defendant asserts is the trial
court's failure to grant a mistrial or direct an acquittal based
upon the fact defendant testified on cross-examination he "was
in Eldora Training School for Boys." Clearly, the claimed error
did not entitle defendant to a directed verdict of acquittal. I do
not understand the majority holds it did. Presumably the major-
ity's reversal is based on what it feels was the trial court's error
in not sustaining defendant's motion for a mistrial.

It is apparent that on his direct examination defendant
carefully recited so much of his history back to 1942 as he and
his counsel thought would place him in a favorable light before
the jury. He testified: "I live at 812 41st Street and have lived
there three years in July. * * * I was in service from 1942 to 1946
and served in the South Pacific. I am employed at the Iowa Pack
and have worked there seven years." Also, "While in the South
Pacific I contracted a disease known as malaria." He further
said on direct examination, "I have *never* been in *any* trouble."

Defendant's examination in chief entitled the State to in-
quire further into his history, at least back to 1940, even though
it may have brought out a matter less favorable to him than was
shown on direct examination. The State was not compelled to
accept what defendant said in chief as a verity.

Nor does the possibility the cross-examination might discredit
him *as a defendant,* as well as a witness, and make his conviction
more probable, render the cross-examination improper, as the
majority suggests. The consideration suggested by the majority

affords no sound basis for abridging the State's right to cross-examine a defendant fully. If cross-examination of an accused is to be held to nullify a conviction merely because it may render it more probable, the State is at an unfair disadvantage in the trial of those charged with crime.

I think the State's cross-examination of defendant insufficient basis for a reversal even though his answer on direct, "I have *never* been in *any* trouble", be disregarded. By showing on direct examination the part of his history thought to be favorable to him the door was opened for the State to inquire further into his history, at least to the extent done here. But when the last quoted answer, which the majority virtually ignores, is considered there can be little doubt the cross-examination does not justify reversal.

The unequivocal assertion defendant was never in any trouble is an extremely broad statement relating to his entire past history. Its meaning is plain. It is not subject to interpretation or construction. It is not material what defendant may have had in mind in making this answer. It entitled defendant's counsel to argue to the jury the evidence showed his client had never been in trouble before. I think it was proper for the State to show on cross-examination the statement was untrue.

Defendant's having been in the Eldora school either fairly implies he was in trouble, as the majority seems to think, or it gives rise to no such implication. If the former, the cross-examination plainly contradicted or disproved this vital statement on direct examination. If the latter, prejudice sufficient for reversal does not appear.

The State did not violate section 781.13, Code, 1954, which provides: "When the defendant testifies in his own behalf, he shall be subject to cross-examination as an ordinary witness, but the state shall be strictly confined therein to the matters testified to in the examination in chief."

As I have tried to explain, the cross-examination, if it created the impression the majority fears it did, was strictly confined to defendant's testimony in chief that he had never been in any trouble. In any event it clearly was confined to his past history gone into on direct examination.

Further, we have repeatedly and uniformly held up to now, notwithstanding section 781.13, "It is the well established rule in this state that, when a defendant in a criminal action is a witness in his own behalf, he stands upon the same footing as any other witness, in so far as his memory, history, motives, or matters affecting his credibility are concerned." (Citing seven decisions, including State v. Wasson, infra, 126 Iowa 320, 101 N.W. 1125.) State v. Voelpel, 208 Iowa 1049, 1050, 226 N.W. 770, 771. Numerous other precedents to like effect include State v. Friend, 210 Iowa 980, 989, 990, 230 N.W. 425; State v. Williams, 238 Iowa 838, 850, 28 N.W.2d 514, 521.

State v. Watson, 102 Iowa 651, 654, 72 N.W. 283, 284, cited with approval in State v. Williams, supra, states: "The county attorney was allowed to cross-examine the defendant * * * with reference to *his various places of residence, his going under assumed names, and his whereabouts at particular times, at considerable length.* This examination was perfectly proper, and the court did not abuse the discretion vested in it in such matters." (Emphasis added.)

State v. Chingren (Ladd, J.), 105 Iowa 169, 173, 74 N.W. 946, 947, holds the State was entitled to show on cross-examination of defendant that at times he ran a bowery and "a jewelry spindle" at county fairs. The opinion says: "It has often been held that on cross-examination inquiry may be made concerning a defendant's different occupations and places of residence. [Citations] The extent to which such inquiry may be carried must necessarily rest in the sound discretion of the trial court."

State v. Kuhn, 117 Iowa 216, 229, 230, 90 N.W. 733, 737, upholds the State's right, notwithstanding what is now section 781.13, to cross-examine a woman charged with murder of her husband as to her relations with another man, to show her character, to develop a motive "and incidentally as matter of contradiction." The opinion states: "Defendant had no right to pose on the witness stand as a loving and dutiful wife if she was not entitled to that character." So here defendant had no right to pose on the witness stand as never having been in any trouble if this were not true.

State v. Brandenberger, 151 Iowa 197, 204, 205, 130 N.W. 1065, 1068, in speaking of cross-examination of a defendant as

to his memory, history, motives, or matters affecting his credibility, says: "Again, it is quite generally held that the extent to which such inquiries may be carried must necessarily rest in the sound discretion of the trial court."

State v. Bittner, 209 Iowa 109, 118, 227 N.W. 601, 605, in upholding a conviction for first-degree murder has this to say: "It is an elementary principle that counsel for the State is privileged to cross-examine the defendant as to his previous history, his prior conduct, habits, and ways of living, as affecting his credibility, and for the purpose of impeaching him. State v. Watson, 102 Iowa 651; State v. Brandenberger, 151 Iowa 197. This matter is largely within the discretion of the court."

State v. Davis (Evans, J.), 212 Iowa 582, 593, 234 N.W. 858, 863, states: "Having opened up the ground in his [defendant's] examination in chief, we can conceive of no reason why the State should not be permitted to enter upon the same ground *and to pursue its further details.*" (Emphasis added.)

State v. Ragona, 232 Iowa 700, 703, 5 N.W.2d 907, 909, in discussing Code section 781.13, says: "What may be said to be 'strictly confined' to matters testified to in chief is left largely to the discretion of the trial court. [Citation] There was no such *clear abuse* of discretion herein as would warrant a reversal at our hands." (Emphasis added.)

The majority opinion seems contrary to the precedents just cited. In answering its own question, "Was the error prejudicial?" the majority concedes, "Were the proceedings civil instead of criminal, *or the witness not the defendant,* we might easily answer 'No'." (Emphasis added.) But under our repeated decisions, in the matter inquired about, defendant stands on the same footing, notwithstanding section 781.13, as any other witness.

State v. Wasson, 126 Iowa 320, 323, 101 N.W. 1125, 1126, cited by the majority, holds it was proper cross-examination to ask a defendant (charged with robbery) questions that "elicited information from which it might be inferred that he had been an inmate of the reform school at Eldora." *Nothing in the Wasson opinion indicates defendant's stay at Eldora was recent.* The statutes in effect when the cited case was decided (sections 2708, 2709, Code, 1897) were such that much more stigma would then

ordinarily attach to a commitment to the Eldora school than to a commitment by the juvenile court under the law in effect in 1940 (chapter 180, Code, 1939, now chapter 232, Codes, 1950, 1954).

Further, when State v. Wasson, supra, was decided the Eldora school was commonly thought and spoken of as the reform school. The Wasson opinion so refers to it. The statutes then referred to it as the industrial school. In 1940 and now the school is called the Training School for Boys. Defendant here so referred to it. A case somewhat like State v. Wasson, supra, is State v. Meeks, 327 Mo. 1209, 39 S.W.2d 765, 769.

State v. Brandenberger, supra, 151 Iowa 197, 204, 205, 130 N.W. 1065, 1068, reaffirms State v. Wasson, supra, in these words: "In Wasson's case, supra, defendant on his cross-examination was asked as to his former residence and occupation, and these questions elicited the fact that he had been an inmate of the reform school at Eldora. *This was held proper, although it tended to disgrace and discredit him—— * * *.*" (Emphasis added.) The Brandenberger case says nothing about the qualification that the stay at Eldora must have been recent, which the majority here reads into State v. Wasson, supra.

In State v. Marinski (Weygandt, C. J.), 139 Ohio St. 559, 560, 41 N.E.2d 387, 388, defendant at one time was sent *because of juvenile delinquency* to the Boys Industrial School. A statute provided such fact " 'shall not be admissible as evidence against the child in any case or proceeding in any other court, * * *.' " On his direct examination, in a trial for operating a motor vehicle without the owner's consent, defendant testified "as to where and how he had spent the previous years of his life. In his narration of the schools he had attended and the places he had been employed, the defendant neglected to mention his incarceration at the Boys Industrial School." In holding the State was entitled to show this fact on defendant's cross-examination, the court says: "To place himself in a favorable light before the court and jury it was necessary for him to tell but part of his history and conceal the remainder. This he did. When this challenge confronted the court and the prosecuting attorney, did this statute render them impotent in their duty to reveal

the truth? The participating members of this court are unanimously of the opinion that it did not. The cross-examination was proper."

The opinion just cited of the distinguished Ohio chief justice is persuasive authority here. It is one of the cases cited by the State which the majority dismisses with the statement, "But they are not helpful to us here." The Marinski case cannot be distinguished on principle from the one now before us.

Defendant is in no position to argue that evidence he was at Eldora in 1940 is too remote in time to be admissible. He was careful to say on direct examination he was in the service from 1942 to 1946, served and contracted malaria in the South Pacific and was *never* in any trouble. This clearly opened the door for the State to cross-examine defendant as to his history at least as recently as 1940. The cross-examination the majority condemns as too remote is not materially more remote in time than the direct examination which goes back to 1942 as to his history and covers defendant's entire lifetime in the matter of his having been in any trouble.

Aside from what is thus far said herein I think the single answer of defendant on cross-examination that in 1940 he was in Eldora Training School for Boys was not, under the circumstances here, sufficiently prejudicial to require reversal. The majority concedes "The record as it stands does not indicate * * *any delinquency under Code section 232.3 as the reason or purpose of his commitment. Undoubtedly a boy may be sent to the Training School under circumstances which, if understood, reflect no discredit but only misfortune." There is no suggestion in the record the jury did not clearly understand the circumstances under which defendant was sent to the training school and, as I shall presently point out, they reflect no discredit on him but only misfortune.

Under chapter 180, Code, 1939 (chapter 232, Codes, 1950, 1954), the juvenile court may send to the Eldora school boys who are merely dependent or neglected, not delinquent or criminal. Thus having been at Eldora is no proof of delinquency or crime.

We seem to be committed to the rule that jurors are presumed to know the law in matters no more plain than the law

pertaining to who may be sent to Eldora. Keller v. Dodds, 224 Iowa 935, 942, 277 N.W. 467; Remer v. Takin Bros. Freight Lines, Inc., 230 Iowa 290, 296, 297 N.W. 297, 299; Fagen Elevator v. Pfiester, 244 Iowa 633, 642, 56 N.W.2d 577, 582. See also Kessel v. Murray, 197 Iowa 17, 22, 196 N.W. 591, 33 A. L. R. 1346; Kowalke v. Evernham, 210 Iowa 1270, 1274, 1275, 232 N.W. 670. Thus the jurors here are presumed to have known (and it is quite evident they did *in fact* know) defendant's having been at Eldora is not evidence he was delinquent or criminal.

Aside from the views just expressed, as the majority indicates, defendant *fully explained* to the jury why he was sent to Eldora. His father and mother separated when he was five. "It was the result of disobeying my father—just not living with him when I was supposed to. My father had me placed in Eldora." *This explanation is undisputed.* The jury had no occasion to speculate as to the circumstances surrounding defendant's commitment to Eldora. There is nothing in them to indicate defendant was delinquent or criminal or that is reasonably calculated to prejudice the average juror against defendant. Indeed it would seem more probable the evidence pertaining to defendant's stay in Eldora would naturally arouse sympathy for him.

It is true, as the majority thinks was significant, the trial court's first reaction to the answer on cross-examination about having been at Eldora seemed to be there was prejudicial error. However upon further reflection, after full argument to the court with citation of authorities (including, as the record shows, State v. Wasson, supra, 126 Iowa 320, 323, 101 N.W. 1125), consideration of the matter of the prosecutor's good faith and very likely a reading of defendant's direct examination, it was decided no mistrial should be declared. The court adhered to this view upon more mature reflection in later overruling defendant's motion for new trial based in part upon its refusal to grant a mistrial.

By overruling the motion for new trial the court virtually found the cross-examination was without prejudice. The trial court was in better position than we are to observe the effect of the cross-examination of defendant upon the jurors. I think an abuse of its discretion does not appear. Certainly no clear abuse is shown. See State v. Hogan, 115 Iowa 455, 458, 88 N.W.

1074; State v. Ean, 90 Iowa 534, 537, 538, 58 N.W. 898; State v. Gadbois, 89 Iowa 25, 32-34, 56 N.W. 272.

The majority indulges "the suspicion that had the witness not been the defendant the prosecutor would not have bothered to go into his teen-age history." It seems equally proper to suspect that had the witness not been the defendant, his counsel on direct examination would not have bothered to show his service in the armed forces and in the South Pacific as far back as 1942 and that he had never been in any trouble. But if a witness other than defendant did so testify on direct examination, it is submitted such cross-examination as we find here would not constitute reversible error.

The majority cites State v. Wheeler, 129 Iowa 100, 106, 105 N.W. 374, 376, State v. Nugent, 134 Iowa 237, 240, 111 N.W. 927, 929, and State v. Asbury, 172 Iowa 606, 613, 154 N.W. 915, 918, Ann. Cas. 1918A 856, for the proposition that error is presumed to be prejudicial. None of these cases involves any question of improper cross-examination of a defendant. The majority is mistaken in what it says concerning State v. Asbury, supra.

The statement the majority quotes from State v. Wheeler, supra, is followed by, "And there is nothing in the instant record, taken as a whole, which can be said to rebut the presumption thus arising." What the majority quotes from State v. Nugent, supra, is followed by, "If the error involves a material point in the case, prejudice must be presumed, unless on survey of the whole record the contrary affirmatively appears."

If there were a sound basis for holding here there was error in the single respect urged by defendant and if any presumption of prejudice arose therefrom, I think the record clearly rebuts the presumption. However the rule here applicable, as stated in the decisions previously reviewed herein and as recognized by the majority, is that "the trial court has a considerable discretion in passing on the * * * propriety of cross-examination * * *" and we will not reverse unless abuse of that discretion appears. State v. Ragona, supra, 232 Iowa 700, 703, 5 N.W.2d 907, 909, says *there must be shown a clear abuse of discretion*. See also, in addition to the previous citations herein, though not involving cross-examination of a defendant, State v. Propp,

193 Iowa 383, 385, 185 N.W. 90; State v. Archibald, 208 Iowa 1139, 1142, 226 N.W. 186.

The majority indicates much concern with "the duty of the court to protect the right of a defendant charged with crime to a fair and impartial trial * * *." Of course an accused is entitled to such a trial and any court should, if it can, see that he gets it. *But this is not the extent of a court's duty in a criminal trial or upon appeal from a conviction.* There are two parties to such an action. The State, no less than the defendant, has the right to a fair trial and it is a court's duty to protect that right with evenhanded justice as much as the corresponding right of the accused. I think the trial court discharged that duty here. The majority virtually shuts its eyes to the rights of the State.

The right of the accused and the State to a fair and impartial trial is of course clear regardless of the nature of the crime charged. But perhaps there are special reasons why the protection of such right seems important in drunken driving cases. They are more numerous than all other criminal cases combined and there is a direct connection between drunken driving and the appalling carnage on our highways.

Of course I would affirm.

BLISS, THOMPSON and LARSON, JJ., join in this dissent.