NORTHERN TRUST & SAVINGS BANK, Appellant, v. IVAN ELLWOOD
et al., Appellees.

**BILLS AND NOTES:** Consideration—Indorsement Subsequent to Full
Execution. The indorsement of a promissory note subsequently to
its *full execution* is without a supporting consideration, and there-
fore nonenforcible by the payee, when the payee suffered no detri-
ment and extended no forbearance by reason of such subsequent in-
dorsement, and when no benefit passed to such indorsers by reason
of their indorsement. (See Book of Anno., Vol. 1, Sec. 9440.)

**CORPORATIONS:** Directors—Personal Liability on Promissory Obli-
gations. A director of a corporation who indorses the promissory obli-
gations of the corporation for the purpose of guaranteeing payment
cannot escape the obligation assumed because of the fact that he
affixed to his signature the official designation of ''director.'' (See
Book of Anno., Vol. 1, Sec. 9480, Anno. 1 *et seq.*)

Headnote 1: 8 C. J. p. 250. Headnote 2: 14a C. J. p. 172.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

DECEMBER 15, 1925.

ACTION in equity, to foreclose a mortgage lien and to fix the
liability of certain defendants who subsequently signed as in-
dorsers a promissory note executed and delivered at the time of
the creation of the lien. The trial court dismissed the action
as against the subsequent indorsers, by reason of failure to prove
a consideration. From the judgment entered, plaintiff appeals.
—*Affirmed.*

*Hansen & Hansen,* for appellant.

*Snyder & Ray* and *Tomlinson & Maley,* for appellees.

DE GRAFF, J.—The Northern Trust & Savings Bank, as
plaintiff, seeks to foreclose a certain chattel mortgage executed
by the Endlock Manufacturing Company, a corporation, to-

1. BILLS AND NOTES: consideration: indorsement subsequent to full execution.

gether with other security given as collateral to a promissory note which evidenced a loan of $5,000 by the bank to said corporation, and demands judgment against the corporation, as maker, and against certain individuals who signed said note as indorsers. The plaintiff was in part successful, in that the lien sued on was established, and personal judgment was entered against the Endlock Manufacturing Company on the note, and also against certain indorsers who had signed their names thereto at the time of its execution. The complaint of the appellant-bank is that the court erred in refusing to decree liability as to certain other indorsers on said note, who signed subsequently to its execution and delivery to the bank.

The quest on this appeal is to discover a consideration sufficient to sustain the subsequent indorsements made by the defendants, Ivan Ellwood, Lloyd D. Ross, and Edwin E. Lucas (now deceased).

The trial court was clearly correct in holding that the indorsements made by these defendants some six weeks subsequent to the consummation of the loan by the bank were not binding upon said indorsers unless a new or additional consideration is shown. This is well settled law. It is elementary. *Briggs v. Downing & Matthews*, 48 Iowa 550; *Farmers Sav. Bank v. Hansmann*, 114 Iowa 49.

It is admitted that the defendants signed the note as indorsers, subsequently to its execution and delivery. They pleaded in answer the absence of consideration, and that they

2. CORPORATIONS: directors: personal liability on promissory obligations.

signed merely as directors of the corporation, and did not intend or contemplate that their signatures would impose a personal obligation. We are concerned solely with the question of consideration. The defensive plea that they indorsed simply as directors is not meritorious, and is legally meaningless. *Kessel v. Murray*, 197 Iowa 17.

The record facts disclose that the Endlock Manufacturing Company was an Iowa corporation engaged in the city of Des Moines in the manufacture of silos. It was in need of money to prosecute its business, and, after some negotiations, secured a loan of $5,000 from the plaintiff-bank, evidenced by a promis-

sory note dated March 24, 1921, due in 90 days. This note was signed by the Endlock Manufacturing Company by its president, Edward Stewart. At the time of its execution and delivery, the following indorsements on the back of said note were made: Edward Stewart, J. W. McLaughlin, F. A. Shepard. These indorsers were directors of the corporation.

It further appears that, to secure the payment of said note, the corporation executed and delivered a chattel mortgage, covering 115,000 feet of lumber which was being used by the company in making silos, and, under the terms of the mortgage, the company was permitted the continued use of this lumber, upon the agreement that all bills of lading and all proceeds from silos should be delivered to the bank. There was a compliance by the company in this particular.

It may be well to observe that, as between the bank and the company, nothing remained to be done in the loan transaction. The contract was fully expressed, and $5,000 in cash passed to the checking account of the corporation.

It becomes pertinent to inquire, therefore, what circumstances gave rise to the subsequent indorsements of the defendants herein. Some difficulty and personal dissension had arisen among the original directors, but this matter did not concern the plaintiff-bank. It did result, however, in two things: (1) A stop-payment order on further checks drawn by the secretary of the corporation on the bank, and (2) a denial of the further use of the silo lumber for manufacturing purposes. These prohibitions find their origin in the objections interposed by the original indorsers of the note in suit. The bank itself never refused to honor any checks drawn on this account, nor did the bank "tie up the lumber." One of the officers of the bank testified:

"We had never given them permission to take the lumber and make the silos, because we never had to. They had the right to make the lumber into silos."

The gist of the situation is that McLaughlin and Shepard, directors and original indorsers, felt that their interests were being jeopardized, and they desired to preserve the maximum of security in the lumber and to hold the bank account intact until new arrangements were made. To consummate this plan, a new

directorate was called into being, and at this time the three defendants in this action were elected. It was then suggested that the new directors should indorse the note previously given. McLaughlin himself testified:

"As the new board came in, it was thought best that all of the new board should share equally in the responsibility of the note."

Apparently to meet the situation and have the lumber used at the factory and the money in the bank subject to check, these men did sign, upon the solicitation and suggestion of the old directors. Operations began at once.

Subsequently to the indorsements by these men, the lumber lien was released by the bank, and a chattel mortgage executed, covering the machinery owned by the corporation. Just when this was done is not definitely shown, but apparently some two or three weeks after the indorsements by these defendants. Nor does the record contain a satisfactory explanation why the lien was changed. It is plain that the bank had no right to demand other or different security, and the evidence fails to establish that the substitution of the lien constituted a part of the indorsement transaction.

Upon a careful consideration of the record, we fail to discover any legal consideration for the indorsements in question. The payee-bank did not extend the term of the loan, and the due date, in fact, had not arrived. The amount of the loan was not increased, nor were the terms of the original note modified in any manner. There was no provision requiring or contemplating further indorsements or the furnishing of additional collateral upon the demand of the holder of the note. The original note contained no clause relative to security, and at the time it was signed by these defendants, $3,300 of the loan had been checked out by the corporation. As a matter of law, the bank itself could not withhold any part of the original loan placed to the credit of this corporation, nor did it attempt to do so.

Clearly, the bank did not suffer any detriment or make any forbearance in the matter. The bank had extended a loan of $5,000 in cash to the account of the corporation. When this was done, the respective rights and obligations were brought

into being.  It is a mere incident that the full amount of the
loan had not been checked out at the time of the subsequent in-
dorsements.  Nor may it be said that there was any benefit flow-
ing to the promisors, the subsequent indorsers.  The new
obligors received nothing for their contract of indorsement.
The transaction did not constitute a novation.  The original debt
remained the same, and there was no substitution of a new
debtor.  No one was released from the original obligation, and
unless a new consideration is shown, the payee-bank occupied
the same position after the indorsements as it did prior thereto.

No consideration is shown, and the judgment entered by
the trial court is—*Affirmed.*

FAVILLE, C. J., and STEVENS and VERMILION, JJ., concur.