STATE OF IOWA, Appellee, v. ANNA HATHAWAY, Appellant.

No. 43681.

NOVEMBER 16, 1937.

John H. Mitchell, Attorney General, Buell McCash, Spec.

Asst. Attorney General, Burr C. Towne, County Attorney, and Ralph Wm. Travis, Asst. County Attorney, for Appellee.

Glenn B. Beers, for Appellant.

MITCHELL, J.—The county attorney of Black Hawk county filed an information against Anna Hathaway, charging her with operating a house of ill fame, contrary to provisions of section 13175 of the Code of Iowa. There was a trial, and the jury returned a verdict of guilty. Defendant has appealed.

The evidence in this case consists of the testimony of two girls, who described in detail what they claimed took place at the house known as 634 Walnut Street, Waterloo, Iowa. From their lips, employed as they claimed, by Mrs. Hathaway, is heard the story of how she operated the house. From the neighbors comes the story of the outside appearance. By policemen who raided the house is told the story of conditions they found there at that time. Opposed to this is the testimony of some of the roomers at the house and Mr. Hathaway, the husband of defendant, who denied specifically what was testified to by the State's witnesses. Mrs. Hathaway in her answers to the two questions asked her denied that she was engaged in the business charged.

No good could be accomplished by setting out the testimony. The question was for the jury, and there was sufficient evidence to sustain its verdict.

I. Appellant complains because the lower court overruled a motion for continuance, which was based solely upon the ground that her counsel did not have adequate time in which to prepare the defense. We have made a careful search of the record but have been unable to ascertain at what time in the proceedings this motion for continuance was filed. The only showing is that contained in appellant's motion for new trial, which is as follows:

"That there was error in overruling the defendant's motion for continuance, which motion was filed immediately before the trial of the cause."

The State infers that the motion was not filed until after part of the jury had been called to the box. We have no way from the record here submitted to us to ascertain what the situation was. Every defendant charged with a crime is entitled to

time to prepare the defense that individual desires to submit, and courts are always anxious to see that proper time is given. But that does not mean that for the purpose of delaying trial continuances should be granted.

Let us look at the record in this case to see whether or not this appellant was given sufficient time to prepare.

She was placed on trial at the January 1936 term, charged with maintaining a nuisance in the operation of a house of prostitution. The case was tried. The jury disagreed. Immediately thereafter counsel representing her in that trial withdrew. She knew of this but neglected to secure counsel. Her present attorney entered this case on the 20th of March and the case was set for trial on the morning of the 23d. From the record before us no objection was made at that time to the placing of the case on the trial calendar. The case involved the same witnesses, the same house, and the same facts and circumstances that were involved at the former trial. There is no showing, by affidavit or in other manner, that the appellant suffered because of the overruling of the motion for continuance. She was represented by able and distinguished counsel, who has had years of experience in trial work and at one time was the Assistant United States District Attorney for the Northern District of Iowa.

■■■ The matter of the allowance or refusal of a motion for continuance is committed to the sound discretion of the trial court, which, being more conversant with local conditions, the status of the docket, the capacity and disposition of counsel, and the background and general setting of the situation, which frequently do not become embalmed in the formal written record, is the better enabled to judge as to the motion for continuance. This court will not interfere or reverse for failure to grant a continuance, unless there is a clear abuse of judicial discretion.

In the case of State v. Maupin, 196 Iowa 904, at page 908, 192 N. W. 828, 830, 195 N. W. 517, this court said:

"We have said, in substance, so often that authorities need not be cited in support thereof, that an application for continuance is addressed peculiarly to the sound discretion of the trial court, and that its ruling thereon will not be interfered with on appeal unless it clearly appears that the trial court has abused his discretion, and that an injustice has resulted therefrom. Attorney Woodson, as shown by affidavits, was not in good

health, and doubtless the trial of the case was severe on him for that reason. However, it is evident from the record that the defendant did not suffer on account thereof. Defendant was given an able defense. We think that the court did not abuse his discretion in overruling the motion.''

In the case at bar no one could read this record and say that the lower court abused the discretion placed in him. There was no possible reason why the case should not have been tried when it was tried. A period of months had elapsed since the arrest in this case. A former trial had resulted in disagreement. If there was failure to secure counsel prior to the time appellant did secure counsel, it was her fault and not that of someone else.

The lower court was right in overruling the motion for continuance.

■■■ II. The appellant complains that the court erred in permitting the State too great a latitude in cross-examining her, such cross-examination greatly exceeding the scope of the direct examination.

She took the witness stand in her own defense. Direct examination consisted of the following two questions:

''Q. You are the defendant in the case? A. Yes, sir.

''Q. Mrs. Hathaway, did you operate during the spring and summer of 1935 a house of ill fame at 634 Walnut Street in Waterloo? A. No, sir.

''Mr. Beers: That is all.''

The State then subjected her to a cross-examination covering the period of time set out in the information and concerning what happened at 634 Walnut Street in Waterloo, Iowa. It will be noted that the question and answer propounded to the accused by her own counsel on direct examination was the ultimate question which the jury itself was to decide. This question and answer threw wide open the gates for the exploration of whether or not Anna Hathaway did in fact operate a house of ill fame at the place designated and during the said period of time.

It would, indeed, be a strange doctrine if the appellant were allowed to deny her guilt categorically, and then would be permitted to preclude the State from inquiring into her conduct with reference to the very matter in issue. She took the witness stand of her own free will, as she had a right to do, and by an-

swering one question she denied her guilt. That question covered the time, the spring and summer of 1935; also, whether she was operating a house of ill fame during that period of time. The State had a right to ascertain from her what happened during the spring and summer of 1935 at the residence described. It had a right to ascertain from her what connection she had with the operation of the house at 634 Walnut Street, Waterloo, Iowa; and whether she knew what was going on in that house, as testified to by the girls who lived there.

We have read the cross-examination complained of, and find that it was proper.

III. The appellant complains that she was prevented from having a fair trial in said cause. We quote from her motion for a new trial:

"9. That the defendant was prevented from having a fair trial in said cause by reason of the fact that there was a vast preponderance of women jurors called. That there was no fair distribution as between sexes on said jury and that so many male talesmen had been excused from jury service that the defendant was practically subjected to the necessity of trying said cause to a jury composed largely of female jurors which was prejudicial to her in the trial of the issues involved. This is for the reason that it is common knowledge that female jurors have an inborn, although probably unrealized, prejudice against any person accused of the crime of which this defendant was accused in this cause."

There is nothing in this record that would lead us to believe there was any prejudice towards appellant because the jury was composed largely of women, except the statement above referred to. No affidavits are submitted and there is no evidence.

We do not find that this question has ever before been raised. No authority is cited by appellant. What possible prejudice could there have been shown towards her when she was compelled to submit the case to a jury composed largely of members of her own sex? It is not prejudice that leads women to believe in the enforcement of the law; nor do we believe that it is prejudice that causes women not to be in sympathy with the business in which this appellant was alleged to have been engaged. Since women have been permitted to serve upon juries they have proved fair and impartial jurors, following closely the

evidence offered and abiding by the instructions given by the court. No more could be expected of any juror, regardless of sex.

Other questions are raised, all of which have been given careful consideration. We come to the conclusion that Anna Hathaway had a fair and impartial trial; that the case was properly submitted to the jury, and that there was sufficient evidence to warrant the jury in finding her guilty.

It therefore follows the case must be, and it is hereby, affirmed.—Affirmed.

HAMILTON, C. J., and all Justices, concur.