STATE OF IOWA, Appellee, v. CHARLES RAGONA, Appellant.

No. 46062.

OCTOBER 27, 1942.

Hays, Guernsey & Powers, of Centerville, for appellant.

John M. Rankin, Attorney General, Jens Grothe, Assistant Attorney General, and Charles L. Johnston, County Attorney, for appellee.

MILLER, J.—Defendant was convicted of the charge of committing lascivious acts with a child of six. For obvious reasons, we do not undertake to make a detailed statement of facts other than such as may be necessary for a decision of the six assignments of error presented for our consideration.

I. The first assignment of error challenges the competency of prosecutrix to testify. Upon examination by the court, she testified as follows:

"The Court: Do you know the difference between the truth and a lie? A. Yes. Q. Do you know what it is to tell the truth? A. Yes. Q. Is there any difference between the truth and a lie? A. I don't know. Q. Well, you know what it is to tell the truth? You know what the truth is? You know what I mean when I say the truth? A. Yes. Q. What is it? A. Well, I don't know."

Upon examination by the county attorney she testified as follows:

"Q. Do you know what it is to tell a lie? Well, I will ask you this, is it right to tell a lie? A. No. Q. Is it right to tell the truth? A. Yes. Q. What happens to people that tell lies? A. They get punished. Q. Do you know what an oath is? A. You hold your right hand up and swear to tell the truth. Q. You hold your right hand up and swear to tell the truth? A. Yes. Q. Will you tell the truth? A. Yes. Q. You won't tell any lies? A. No."

Following such testimony, over objection by defendant, the court permitted the child to be sworn and to testify. We hold that the court did not abuse its discretion by such ruling. State v. Yates, 181 Iowa 539, 164 N. W. 798; State v. Hall, 225 Iowa 1316, 283 N. W. 414; State v. Diggins, 227 Iowa 632, 288 N. W. 640, and cases cited therein.

II. The second assignment of error challenges the overruling of defendant's objection to the competency of Mabel Heintze, secretary to the county attorney, to testify to the age of the defendant. Her testimony was that on June 24, 1941, she heard defendant say that he was 31 years old; also that she has known defendant for 13 or 14 years and that he was more than

five years old when she first knew him. We hold that the testimony was competent to prove that defendant was over 18 years old.

█ It is also asserted that the witness's name was not endorsed on the indictment and that there is no showing that any notice had been served. However, the abstract fails to show that any objection was made to her testimony on this ground in the trial court. It cannot be raised for the first time on appeal.

█ III. The third assignment asserts that the court erred in permitting unlimited cross-examination of defendant. We hold that there is no merit in the contention.

On direct examination, defendant testified as follows:

"Mr. Hays: Your name is Charles Ragona? A. That is right. Q. You are the defendant in this case, Mr. Ragona? A. Yes. Q. Did you at any time ever take any lascivious liberties or do any lascivious acts with the person of [prosecutrix]? A. No, sir. Q. Did you at any time ever take her panties down or off? A. No, sir. Q. Did you at any time ever take your penis and rub it against any sores on the person of [prosecutrix]? A. No, sir."

On cross-examination, over renewed objections, defendant was called upon to testify that he had lived in Appanoose county 31 years, took prosecutrix for a ride in his Ford automobile on the night in question, about 7:00 p. m.; drove to the Esther Apartments, six or seven blocks, let his wife out there, tried to get his wife to go to a show; knows where Centerville Grammar School is (the situs of the alleged acts), has been to that building; after leaving the Esther Apartments, he returned home (describing the route in detail); he and prosecutrix were alone in the car; he did not go anywhere else that evening with the child; four or five days later he was in the office of the county attorney with the county attorney, a deputy sheriff and the chief of police, signed a paper (which was not offered in evidence) after looking it over without reading each page. A number of questions were asked concerning the contents of the written statement, about which defendant disclaimed any knowledge, either as to the contents of the writing or whether

he made the statements, testifying, "I was too excited to know anything"; had the impression he was under arrest; he had had a couple of drinks on the night he was with the child, a glass of wine and a highball; does not remember saying, in the county attorney's office, that he had had three big tumblers of wine and two highballs, but does not believe he said that; did not read any statement to that effect in the paper he signed for the county attorney.

Defendant contends that the extensive cross-examination, which the court permitted, violated section 13892, Code, 1939, which provides:

"When the defendant testifies in his own behalf, he shall be subject to cross-examination as an ordinary witness, but the state shall be strictly confined therein to the matters testified to in the examination in chief."

We do not agree with this contention. What may be said to be "strictly confined" to matters testified to in chief is left largely to the discretion of the trial court. State v. Archibald, 208 Iowa 1139, 1142, 226 N. W. 186, and cases cited therein. There was no such clear abuse of discretion herein as would warrant a reversal at our hands.

The question now before us is very similar, if not identical, to that presented in State v. Hathaway, 224 Iowa 478, 481, 276 N. W. 207, 209, wherein this court, through Justice Mitchell, states:

"The appellant complains that the court erred in permitting the State too great a latitude in cross-examining her, such cross-examination greatly exceeding the scope of the direct examination.

"She took the witness stand in her own defense. Direct examination consisted of the following two questions:

" 'Q. You are the defendant in the case? A. Yes, sir.

" 'Q. Mrs. Hathaway, did you operate during the spring and summer of 1935 a house of ill fame at 634 Walnut Street in Waterloo? A. No, sir.

" 'Mr. Beers: That is all.'

"The State then subjected her to a cross-examination

covering the period of time set out in the information and concerning what happened at 634 Walnut Street in Waterloo, Iowa. It will be noted that the question and answer propounded to the accused by her own counsel on direct examination was the ultimate question which the jury itself was to decide. This question and answer threw wide open the gates for the exploration of whether or not Anna Hathaway did in fact operate a house of ill fame at the place designated and during the said period of time.

"It would, indeed, be a strange doctrine if the appellant were allowed to deny her guilt categorically, and then would be permitted to preclude the State from inquiring into her conduct with reference to the very matter in issue."

We hold that the testimony of defendant herein, though brief, went directly to the very matter in issue, the ultimate question which the jury was to decide. Even though defendant's testimony was brief and categorical, it opened the door for the exploration whether defendant had committed the acts which he denied. The cross-examination was directed to that issue and the rulings were within the discretion of the court.

IV. The fourth assignment asserts that the court erred in refusing to direct a verdict in favor of the defendant. There is no merit in the contention. The testimony of prosecutrix described acts which would constitute the offense charged. Much of the argument of counsel is based upon the contention that the testimony was incredible. That was a question for the jury to decide. It is not our province to usurp its function. Other portions of the argument assert that the competent evidence was insufficient to support a conviction. The difficulty with such argument is that counsel assert that evidence of the State is incompetent which we have held to be competent.

V. The fifth assignment asserts that, in its instructions, the court failed to adequately define the terms "lascivious," "lewd," and "immoral," contending that such terms are technical terms not within the common use and understanding of the jury. The State counters with the contention that the terms are in common use and can be understood by a person of ordinary intelligence. We agree with the State.

VI. The sixth and final assignment asserts that the verdict is contrary to and not supported by the evidence, is the result of passion and prejudice, and contrary to the physical facts. Except for the charge of passion and prejudice, this assignment is disposed of by division IV of this opinion, supra. The issue of passion and prejudice was raised on motion for new trial by the general assertion that the verdict "is the evident result of passion and prejudice entertained by the jury against the defendant." This proposition was presented to the sound discretion of the trial court. We find no such abuse of discretion as would warrant or require a reversal herein.

The judgment is—Affirmed.

WENNERSTRUM, C. J., and GARFIELD, OLIVER, BLISS, HALE, STIGER, and MITCHELL, JJ., concur.