**STATE of Iowa, Appellee,**

v.

**Charles JENSEN, Appellant.**

**No. 53999.**

Supreme Court of Iowa.

Sept. 9, 1971.

Maurer & Jones, Ames, for appellant.

Richard C. Turner, Atty. Gen., and Richard N. Winders, Asst. Atty. Gen., and Charles E. Vanderbur, County Atty., Ames, for appellee.

UHLENHOPP, Justice.

This appeal presents several legal problems which arose in a prosecution of charges relating to gambling.

The factual situation is this. One Wacker owned a house consisting of one story and basement at 217 Hilltop Road in Ames, Iowa. At the time of the events in question, the main floor was rented and occupied by four single girls, and some or all of the basement—an issue in dispute—was rented and occupied by defendant Jensen and another individual as an apartment. The first room of the basement, which is entered from the outside, contains some tables and chairs as well as storage space and utilities. Beyond that is a living room and bedrooms.

The jury could find from the evidence that poker games were regularly played by university students and others in the first room of the basement, that defendant got up the games, and that he was in possession of that room and of the tables. This last matter—whether defendant was in control of the room and tables—was the fighting issue on the facts.

Darryl E. Green, a some-time university student, was a rather regular participant in the poker sessions. His performance at poker was not at all inspiring. First he lost all his own money; then he lost some or all of the money he raised by passing bogus checks. His story (not a new one) was that the dealer cheated. The truth may be that the games were rigged so that university students were separated from their money by professional gamblers, as the prosecutor thinks, but the evidence shows only that poker was regularly played for money.

Green's bad checks brought him in confrontation with the county attorney. By this time Green had decided that playing at games for money is, in truth, a vice, and ought not be permitted. Besides, he felt cheated. He therefore decided to divulge to the county attorney what was going on at defendant's place, and did so. The county attorney thereupon provided Green with funds to gamble some more so that a raid could be set up. With characteristic ineptness, Green proceeded to lose the county attorney's money at the tables.

Meanwhile, the county attorney put defendant's place under surveillance. The county attorney himself once actually peered in the windows, although the time that he did so is unclear.

On the evening of May 13, 1969, Green went to defendant's place. A poker game was in progress. Green got word to the county attorney that he was inside defendant's place and a poker game was going on, and he named the individuals who were there. The county attorney thereupon presented a sworn information for a search warrant to a magistrate, Honorable John L. McKinney. Judge McKinney placed the

county attorney under oath and took his testimony. The county attorney testified he had personal knowledge that gambling regularly took place at defendant's residence, that Green furnished him information. about the gambling (the magistrate knew Green), that Green had supplied information which proved reliable on previous occasions (Green later testified he had not given information except on gambling at the place in question), that the county attorney had received information from Green that Green was then inside defendant's place and a poker game was in fact in progress, that the county attorney had placed defendant's establishment under surveillance, had seen people going in, and had looked in the windows, that the county attorney had furnished Green with money with which to gamble, and that certain named individuals, including one Grady whom the magistrate knew, were participating in this particular game. The magistrate issued a search warrant.

Later the same night, the county attorney led officers of the Iowa Bureau of Criminal Investigation and the Ames Police Department in a raid of defendant's place. When this law enforcement personnel entered the first room of the basement, several individuals were seated around· a cloth-covered table and other individuals were standing around the table. Green was present. In the center of the table was the sum of $21 in money, and additional sums of money· were lying in front of the seated individuals—about $200 in all. Cards were on the table. The county attorney read the search warrant aloud, and the officers seized the tables, cloth cover, money, and cards and arrested the individuals.

Defendant was later charged with both keeping a gambling house and possessing gambling devices. He pleaded not guilty. The two charges were tried together to a jury, which found defendant guilty of both of them. Defendant was sentenced accordingly, and appealed from both sentences. We consider the two cases together.

Defendant makes several contentions here which require consideration. First, he contends the trial court made erroneous evidentiary rulings with respect to the scope of cross-examination, relevancy, and hearsay. Second, probable cause was not shown for issuance of the search warrant and the warrant was improperly executed. Third, substantial evidence was not introduced that defendant was in control of the place where the gambling occurred or of the gambling devices.

I. *Evidentiary Rulings.* Three rulings on evidence are involved.

(a) The defense was that defendant was not in control of the room the officers entered or of the devices seized. Defendant took the stand on his own behalf. His direct testimony was carefully limited to a description of the first room in the basement and of the adjoining rooms, and closed with this: "On the evening of the arrest, the area, exclusive of the apartment, is where the events were occurring, and that this portion was not leased by the witness [defendant]."

On cross-examination the State immediately took up the portion of defendant's answer as to "where the events were occurring." The prosecutor wanted to know what events were occurring. He asked, "Was poker or card-playing for money being played that evening?" Defendant objected that the question was beyond the scope of direct examination. The trial court stated that defendant had been asked in substance on direct, "Is that where this game or whatever it was [was] going on that night," and ruled, "I think that opens it up." We believe the trial court was correct.

But then the prosecutor ranged farther in his questions. To establish that defendant kept a gambling house, the State desired to show a course of gambling over a period of time. The prosecutor went beyond the night in question and asked if gambling had taken place there before. Defendant's objection, "beyond the scope

of direct examination," was overruled. The same objection was overruled to a question as to how many times poker had been played at this place.

The latter objections squarely bring into focus § 781.13, Code, 1971:

When the defendant testifies in his own behalf, he shall be subject to cross-examination as an ordinary witness, but the state shall be strictly confined therein to the matters testified to in the examination in chief.

We may put aside as not involved here the cross-examination of a defendant as to credibility. As to that he is, in the language of the statute, "subject to cross-examination as an ordinary witness". State v. Kelley, 161 N.W.2d 123 (Iowa). Our problem relates to defendant's testimony regarding the facts of the charges. Defendant insists the State was restricted to "the matters testified to in the examination in chief," citing the statute, while the State claims that when defendant testified in chief on a matter relating to the offenses, he opened up the whole subject of his guilt or innocence, citing State v. Shepard, 247 Iowa 258, 73 N.W.2d 69.

■ We are not concerned, of course, with the policy of the statute. As to that, see 8 Wigmore, Evidence, § 2276(d) at 448 (3rd ed.); Note, 24 Iowa L.Rev. 564. Our duty is to observe the statute faithfully. State v. Johnson, 261 Iowa 661, 155 N.W. 2d 512. We think the present case is an appropriate one in which to reexamine the Shepard decision.

Shepard was charged with fourth-offense driving while intoxicated, and testified on his own behalf solely about the principal incident on trial. On cross-examination he was asked about the three prior offenses. His attorney objected, but not on the ground that the question went beyond the scope of direct. The objection was overruled by the trial court. State v. Shepard, supra, 247 Iowa at 264, 73 N. W.2d at 73 ("Over an objection containing numerous grounds, none of which, however, was that of improper cross-examination, the defendant was required to answer."). The affirming decision of this court, however, was not placed on the inadequate objection but on the broader basis, favored by Wigmore, that the proper scope of cross-examination when the defendant takes the stand is the whole fact of guilt or innocence.

We now think the Shepard interpretation unduly extends the statute. True, a defendant may testify so broadly on direct that he opens up the whole matter of his guilt or innocence, and he may do so very briefly. Cases of that sort are State v. Hathaway, 224 Iowa 478, 276 N.W. 207, and State v. Ragona, 232 Iowa 700, 5 N. W.2d 907. In Hathaway the defendant was charged with operating a house of ill fame during the spring and summer of 1935. Her counsel asked her only two questions on direct examination—one, her identity, and the other, this:

"Q. Mrs. Hathaway, did you operate during the spring and summer of 1935 a house of ill fame at 634 Walnut Street in Waterloo? A. No, sir."

This court approved cross-examination on the whole matter of the defendant's guilt or innocence, saying, "It will be noted that the question and answer propounded to the accused by her own counsel on direct examination was the ultimate question which the jury itself was to decide." 224 Iowa at 481, 276 N.W. at 209.

■ When, however, the defendant is not asked the ultimate question in the case on direct by one or more questions but is asked only about specific matters, to allow the prosecutor to range over the whole question of guilt or innocence is to read out of the statute the restriction that cross-examination is limited to the matters inquired into on direct. On that point we now overrule the Shepard case. We do not mean to say the prosecutor can only parrot the questions propounded on direct. Cross-examination may deal with the *mat-*

ters inquired into on direct, and questions fairly within the area of those matters constitute proper cross-examination. As stated in 98 C.J.S. Witnesses § 395 at 175, cross-examination of an accused is not restricted to "a mere categorical review of the matters stated in the direct examination, but may cover any matter referred to, or within the fair purview of, direct examination." See also State v. Broten, 176 N.W.2d 827 (Iowa). Neither do we mean to erode the traditional discretion of trial courts in ruling on marginal questions during cross-examination. State v. Harrington, 178 N.W.2d 314 (Iowa); State v. Van Voltenburg, 260 Iowa 200, 147 N.W.2d 869.

■ We realize that the present decision changes a rule of evidence for criminal trials. The new rule will not be applied retrospectively. It will be applied only to (a) the present case, (b) cases in which trial commences on or after the filing date of this opinion, and (c) cases tried before the filing of this opinion in which proper objection was made on trial and the error was properly preserved and (i) which are pending on direct appeal to this court on the filing date of this opinion or (ii) which can still timely be and are directly appealed to this court after the filing date of this opinion. See State v. Schatterman, 171 N.W.2d 890 (Iowa).

■ In the present case defendant confined himself on direct examination to the matter of the physical layout of the basement. He mentioned only incidentally to his description of the premises that "events were occurring," and then only with respect to "the evening of the arrest." To allow the State to range back in its questions to show a prior course of gambling was error.

■ (b) Green testified for the State and was asked by the prosecutor whether any of the participants or watchers at the poker games were armed. Defendant objected that the question was irrelevant and would inflame the jury. The objection was overruled. Green answered in substance that some of the individuals carried weapons at other places but not at the games.

We think the objection should have been sustained. The presence of weapons is not an element of either offense charged. Cf. State v. Wallace, 259 Iowa 765, 145 N.W. 2d 615; 22A C.J.S. Criminal Law § 611 at 419. That some of the individuals carried arms at other places and on other occasions was especially irrelevant. If individuals at the game on the night of the search had been armed and this had been mentioned in the testimony describing the search, a different situation would exist. State v. Wilson, 173 N.W.2d 563 (Iowa); State v. Schenk, 236 Iowa 178, 18 N.W. 2d 169; State v. King, 190 Kan. 825, 378 P.2d 147; 22A C.J.S. Criminal Law § 712 at 967–968, § 603 at 409. But no one claims that any gambler or watcher was armed that night. The county attorney was present at the search and was aware of the facts.

■ (c) As part of his evidence showing that defendant was in control of the place where the gambling occurred and of the gambling devices, the State sought to show that defendant lived at 217 Hilltop Road. The prosecutor asked a witness what defendant's address was according to the telephone directory. The objection of hearsay was overruled and the witness answered, "It is listed as 217 Hilltop." The objection should have been sustained. Seay v. State, 93 Okl.Cr. 372, 228 P.2d 665.

■ The remaining question on these evidentiary rulings is the matter of prejudice. Iowa adheres to the rule that "error in admission of evidence must be prejudicial to an accused to constitute cause for reversal." State v. Wallace, 259 Iowa 765, 771, 145 N.W.2d 615, 619; see Model Code of Evidence, Rule 6(b). This court has said, "A common test to determine whether a ruling on the admission of evidence was prejudicial is whether, upon a review of the record, it sufficiently appears the

rights of the complaining party have been injuriously affected by the error or he has suffered a miscarriage of justice." State v. Mayhew, 170 N.W.2d 608, 619 (Iowa); State v. Wallace, supra, 259 Iowa at 771, 145 N.W.2d at 619.

We think the erroneous evidentiary rulings entitle defendant to another trial.

Since the case must be retried, we proceed to problems which will probably arise on retrial.

II. *The Search Warrant.* Two issues regarding the search warrant are presented —its issuance and its execution.

(a) Defendant contends that probable cause for issuance of the search warrant was not shown. The controlling decisions are Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723; Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637; State v. Spier, 173 N.W.2d 854 (Iowa); and State v. Salazar, 174 N.W.2d 453 (Iowa). See also Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306; United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723.

■ Under those decisions, search warrants cannot be issued on an affiant's opinions, conclusions, or beliefs. The written application presented here to the magistrate was of that character; if the search warrant depended on that document alone, it would fall. Moreover, if an application for a search warrant is predicated on information furnished the applicant by another individual, as this one substantially was, the magistrate must be provided with the facts and circumstances both underlying such informant's knowledge and supporting his reliability. If search warrants could be handed out on conclusions that some illegal activity is going on or that someone has so informed the affiant, search warrant proceedings would become a mere ritual and the right of the people to be secure in their persons, houses, papers,

and effects would become a worthless guaranty.

On the other hand, recognizing that law enforcement is practical business, the United States Supreme Court has said, "[W]e do not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause * * *; that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial * * *; that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense * * *; and that their determination of probable cause should be paid great deference by reviewing courts * * *." Spinelli v. United States, supra, 393 U.S. at 419, 89 S.Ct. at 590, 21 L.Ed.2d at 645.

■ The factual information presented under oath to the magistrate in this case goes much farther than the opinions and conclusions and the informants' statements in the cited cases. In Aguilar, only an affidavit was presented, which recited in relevant part:

Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept in the above described premises for the purpose of sale and use contrary to the provisions of the law. 378 U.S. at 109, 84 S. Ct. at 1511, 12 L.Ed.2d at 725.

This of course was held insufficient.

In Spinelli the affidavit recited in essence that the officers saw the defendant's car cross a bridge on certain days and park at a certain place, the place had two telephones with separate numbers, the defendant was known to affiants and officers as a gambler and an associate of gamblers, and the officers had been told by an informant that the defendant was engaged in

making book. This too was held insufficient.

The search warrant in the Spier case was issued on hearsay upon hearsay and on opinions and was, of course, held invalid. In Salazar only general opinions and conclusions supported the warrant, and it was invalidated. In fact, the affiant in the Salazar case did not divulge the underlying factual information to the magistrate when he obtained the warrant because "he didn't feel it would be right to put it through before the hearings." State v. Salazar, 174 N.W.2d at 454 (Iowa). Apparently the officer thought that securing the search warrant was a perfunctory matter and that the magistrate was not to be informed about the factual basis for the raid until after it had been conducted. This, obviously, is the reverse of what the Fourth Amendment contemplates.

In the case at bar, however, the affiant gave testimony under oath before the magistrate. The identity of the informant was divulged, and indeed the magistrate knew him. The informant had been in trouble over bad checks as a result of gambling and in that connection had explained to the county attorney what was going on at defendant's place. The county attorney had put the place under surveillance and had provided the informant with money to carry on gambling so that a raid could be set up. On the night in question, the informant went to defendant's place, and a poker game was going on. He got word to the prosecutor to that effect, and even told who was at the game. The prosecutor went before the magistrate, related this information under oath, told the magistrate that the informant was in defendant's place at that very time and a poker game was in fact in progress, and identified individuals who were there—one of whom, Grady, the magistrate also knew through court appearances.

On the question of probable cause, no two cases are alike, and a great variety of factual situations have reached appellate courts. Annots., 14 A.L.R.2d 605, 100 A.L.R.2d 525, 10 A.L.R.3d 359. We hold on the evidence here that sufficient factual information was given the magistrate to support his finding of probable cause.

(b) As to defendant's contention that the search warrant was illegally executed, about four hours elapsed after the warrant was issued before the raid was conducted. Agents of the Iowa Bureau of Criminal investigation and officers of the Ames Police Department went with the county attorney to defendant's place and searched it. Had the county attorney gone alone we would be confronted with the question of whether he could legally execute the warrant and, if not, whether such illegality rendered the fruits of the search inadmissible. But this group of law enforcement personnel conducted the search and seizure in a body.

■■■■ Application for a search warrant may be made by any "credible resident of this state". § 751.4. The County attorney could therefore make the application. Execution of a search warrant is governed by § 751.7:

> A search warrant may in all cases be served by any peace officer, but by no other person, except in aid of the officer on his requisition, he being present and acting in its execution.

The agents of the bureau and the policemen were all peace officers. § 748.3(3) and (4). The county attorney is enjoined by law to "enforce or cause to be enforced in his county, all of the laws of the state * * *." § 336.2(1). We think we would be unduly technical if we held that the search warrant was illegally executed. It was in fact carried into execution by the posse, all of whom were peace officers save one and he was a law enforcement official. The presence of that one person did not invalidate execution of the warrant. See Simmons v. Louin, 213 Miss. 482, 57 So.2d 133; White v. State, 81 Okl. Cr. 399, 165 P.2d 151; Commonwealth v. Orwig, 96 Pa.Super. 383.

■ That the return on the back of the warrant was subsequently signed by the county attorney does not change the result. The manner in which legal process is in fact executed controls. United States v. Greene, 141 F.Supp. 856 (D.C.); People v. Daily, 157 C.A.2d 649, 321 P.2d 469; Carson v. State, 204 Ind. 273, 183 N.E. 544; Wince v. State, 206 Miss. 189, 39 So.2d 882; McMillon v. State, 95 Okl.Cr. 409, 247 P.2d 295; Jackson v. State, 73 Okl. Cr. 149, 118 P.2d 1044; Tymer v. State, 43 Okl.Cr. 212, 277 P. 676; State v. Calvert, 219 Tenn. 534, 410 S.W.2d 907.

The trial court rightly held the search warrant was properly issued and executed.

■ III. *Sufficiency of Evidence.* Defendant contends that the evidence is insufficient to generate a jury question as to guilt. When the officers burst in, several individuals were seated around a cloth-covered table on which was lying a "pot" of $21, sums in money in front of the partici-pants, and cards. Certainly these students and others had not gathered to read poetry. Green testified they were gambling and that they regularly gambled there, and the jury could reasonable so find.

Green further testified positively and without objection that defendant instigated the games, that they took place in the basement portion of the house, that defendant rented the basement portion, and that defendant was in possession of the poker tables. Defendant's testimony that the area in which the gambling occurred was used by all the tenants created a factual dispute as to whether he was in control of it but did not nullify the State's prima facie case. The case was properly for the jury. State v. Mabrey, 245 Iowa 428, 60 N.W.2d 889.

Other matters argued are not likely to arise on retrial.

Reversed.

All Justices concur.