STATE of Iowa, Appellee,

v.

Janice IVORY, Appellant.

No. 58995.

Supreme Court of Iowa.

Nov. 17, 1976.

Donald W. Sylvester, Sioux City, for appellant.

Richard C. Turner, Atty. Gen., Ray Sullins, Asst. Atty. Gen., Zigmund Chwirka, County Atty., for appellee.

MASON, Justice.

Defendant, Janice Ivory, was charged by county attorney's information filed December 4, 1974, with delivery of a controlled substance, to wit: heroin, in violation of section 204.401(1), The Code. At arraignment counsel was appointed for defendant and her application for time within which to move or plead was granted. Defendant made several applications for extension of this time, all of which were granted upon her waiver of the right to a speedy trial. June 3, 1975, defendant entered a plea of not guilty. Trial to a jury resulted in the return of a verdict finding defendant guilty of the crime charged. Defendant's motions for new trial and in arrest of judgment were overruled and she was sentenced to serve a term of ten years in the Women's Reformatory at Rockwell City and fined $500.

Defendant's subsequent request for new and different court appointed counsel to assist her with this appeal was granted November 12. Defendant filed a second motion in arrest of judgment and a request for an accommodation hearing December 1. Both motions were resisted by the State and overruled by the trial court December 15. Defendant appeals from judgment imposing sentence on her conviction.

The State's evidence consisted primarily of the testimony of Joleen Hass, an undercover agent for the Sioux City Police Department. She testified that in October of 1974 she drove to Omaha, Nebraska with defendant and defendant's husband to purchase a quantity of heroin. Upon their return to Sioux City Joleen paid the Ivorys $250 and received four tinfoil packets of heroin. A small amount of the heroin was given to the Ivorys which "is customary" when a drug buy is consummated. A few hours later the packets were given to Officers Russell White, Jr., and Joseph Frisbie, the same officers who had provided the $250 necessary to make the buy. Officers White and Frisbie corroborated Joleen Hass' testimony.

In addition to Officers White and Frisbie, the State called other Sioux City Police

Department personnel to testify as to the chain of possession. Laboratory experts of the Bureau of Criminal Investigation established the tinfoil packets in fact contained heroin.

Defense witnesses were defendant and her husband and both denied having sold heroin to the undercover agent in October of 1974.

Defendant in seeking reversal maintains the trial court erroneously permitted the State, over her counsel's objections, to exceed the bounds established by section 781.-13, The Code, in cross-examining her. She also insists the trial court erred in denying her request for an accommodation hearing in post-sentencing proceedings. These contentions present the issues for review.

I. Defendant's argument in support of her first contention is based on section 781.-13 which provides:

"When the defendant testifies in his own behalf, he shall be subject to cross-examination as an ordinary witness, but the state shall be strictly confined therein to the matters testified to in the examination in chief."

Defendant insists the following excerpt from the trial transcript establishes that the trial court committed reversible error by permitting the State's cross-examination of defendant to proceed contrary to section 781.13, The Code:

"Q. Did you ever have occasion to use drugs in the presence of Joleen Hass before? A. No.

"[Defendant's attorney]: This is objected to, your honor, as not having anything to do with any of the issues in this case, not in any manner binding upon the defendant.

"THE COURT: The answer may stand.

"Q. Have you ever used drugs?

"[Defendant's attorney]: That is objected to as having nothing to do with any of the issues in this case, improper cross-examination.

"THE COURT: Well, you may answer.

"A. Yes.

"Q. And what drugs have you used? A. Marijuana.

"* * *

"All right. The question, then, is in essence: Have you ever been in a place where Joleen Hass, A. J. Rippatoe was, you were there or your husband, with drugs present, with drugs present in that apartment?

"[Defendant's attorney]: This is objected to, your honor, as beyond the scope of direct examination, not in any manner binding upon this defendant, nothing to do with the issues in this case.

"THE COURT: You may answer.

"A. Not with all present, no."

Defendant maintains the foregoing challenged questions were directed to an area of inquiry not opened up by direct examination and were immaterial and not germane thereto.

We set out the entire direct examination of defendant as disclosed by the trial transcript:

"By Mr. O'Brien:

"Q. Would you state your name for the Court, please? A. Janice Ivory.

"Q. Where do you live? A. 915½ Nebraska.

"Q. Is that in Sioux City, Woodbury County, Iowa? A. Yes, it is.

"Q. Did you on or about October 2d, 1974, sell or deliver or take part in the sale or delivery of any drugs and/or heroin of any kind to Joleen Hass? A. No.

"Q. Did you see Joleen Hass on or before October 1st, 1974? A. Well, at that time we was—

"Q. Just answer the question. A. No.

"Q. On October 1st, 1974? A. Yes, she called us at the Martin Apartments and left word at the desk that she wanted us to pick her up and take her home.

"Q. And who was 'us'? A. Geames, my husband, and myself.

"Q. And did you do this? A. Yes."

The following statement from *State v. Monroe*, 236 N.W.2d 24, 29 (Iowa 1975), is apposite to the problem:

"Section 781.13, The Code, permits the prosecution to cross-examine a defendant as an ordinary witness, but the State is strictly confined in cross-examination to the matters testified to by the defendant in his examination in chief.

"The scope and extent of cross-examination are largely within the discretion of the trial court. * * * [citing authorities]. Cross-examination may cover fully and fairly all matters raised on direct examination. * * * [citing authority]. Cross-examination of a defendant is not restricted to a 'mere categorical review of the matters stated in the direct examination, but may cover any matter referred to, or within the fair purview of, direct examination.' *State v. Jensen*, 189 N.W.2d 919, 924 (Iowa 1971), quoting 98 C.J.S. Witnesses § 395, p. 175."

In this connection the following statement from *State v. Broten*, 176 N.W.2d 827, 828 (Iowa 1970), is relevant:

"It is well settled that the manner in which, and the extent to which, cross-examination of a defendant may be pursued is largely a matter of the trial court's discretion, and its ruling will be disturbed only upon a clear showing that such discretion has been abused. * * * [citing authorities]."

Defendant contends her prior drug use is irrelevant as to her guilt or innocence of the crime charged and is thus outside the scope of permissible cross-examination established by section 781.13.

Defendant relies heavily upon *State v. Jensen*, supra. There defendant was charged with keeping a gambling house and possessing gambling devices. Defendant maintained he was not in control of the room or of the devices seized therein. Defendant's direct testimony was limited to a description of the room "where the events were occurring." On cross-examination the State wanted to know what events were occurring. Defendant objected on the ground the question was beyond the scope of direct examination. This court agreed with the trial court's conclusion that the area was opened up by the question on direct, "Is that where this game or whatever it was [was] going on that night?" The State however was not satisfied and sought to establish the charge by showing a course of gambling over a period of time. Defendant was asked if gambling had taken place there before the night of the raid. Defendant's objection, "beyond the scope of direct examination," was overruled. On appeal, this court held:

"When, however, the defendant is not asked the ultimate question in the case on direct by one or more questions but is asked only about specific matters, to allow the prosecutor to range over the whole question of guilt or innocence is to read out of the statute [781.13] the restriction that cross-examination is limited to the matters inquired into on direct. * * *

" * * *

"In the present case defendant confined himself on direct examination to the matter of the physical layout of the basement. He mentioned only incidentally to his description of the premises that 'events were occurring,' and then only with respect to 'the evening of the arrest.' To allow the State to range back in its questions to show a prior course of gambling was error." 189 N.W.2d at 923–924.

As we understand defendant's challenge to the court's ruling on defense objections to cross-examination of Mrs. Ivory it is based on the theory her direct testimony related only to the specific date in question and the State's questions were thus outside the scope of direct examination and related to matters irrelevant to the crime charged.

The State on the other hand contends the cross-examination of defendant was proper and relies on the language in *Jensen* set out earlier and two cases cited therein.

In *State v. Hathaway*, 224 Iowa 478, 481–482, 276 N.W. 207, 209, direct examination of defendant consisted of the following two questions:

" 'Q. You are the defendant in the case? A. Yes, sir.

" 'Q. Mrs. Hathaway, did you operate during the spring and summer of 1935 a house of ill fame at 634 Walnut Street in Waterloo? A. No, sir.' "

In considering the proper scope of her cross-examination the court said:

"The State then subjected her to a cross-examination covering the period of time set out in the information and concerning what happened at * * * [the address in question]. It will be noted that the question and answer propounded to the accused by her own counsel on direct examination was the ultimate question which the jury itself was to decide. This question and answer threw wide open the gates for the exploration of whether or not * * * [defendant] did in fact operate a house of ill fame at the place designated and during the said period of time.

"It would, indeed, be a strange doctrine if the appellant were allowed to deny her guilt categorically, and then would be permitted to preclude the State from inquiring into her conduct with reference to the very matter in issue. * * * The State had a right to ascertain from her what happened during the spring and summer of 1935 at the residence described. It had a right to ascertain from her what connection she had with the operation of the house at 634 Walnut Street, Waterloo, Iowa; and whether she knew what was going on in that house, as testified to by the girls who lived there." Id.

In State v. Ragona, 232 Iowa 700, 5 N.W.2d 907, defendant testified on direct he was the defendant and he did not commit the lascivious acts charged. On cross-examination, over repeated objections, the State questioned defendant concerning his knowledge of the situs of the alleged crime, whether he had been there before, his actions on the night in question and various other areas of interest to the prosecution. This court approved the cross-examination and in so doing stated:

"The question now before us is very similar, if not identical, to that presented in State v. Hathaway * * * [supra], wherein this court * * * states:

" * * * [Extensive quotation of Hathaway, supra, including portions set forth above]

"We hold that the testimony of defendant herein, though brief, went directly to the very matter in issue, the ultimate question which the jury was to decide. Even though defendant's testimony was brief and categorical, it opened the door for the exploration whether defendant had committed the acts which he denied. The cross examination was directed to that issue and the rulings were within the discretion of the court." 232 Iowa at 703–704, 5 N.W.2d at 909–910.

In response to the State's contention it could be forcibly argued that the extent and character of the direct examination of the accused in both Hathaway and Ragona made permissible a much broader scope of cross-examination than did the direct examination of defendant in the case now before us. In the cited cases the State's cross-examination concerned defendant's denial of the crime charged whereas defendant here was questioned about alleged occurrences claimed to have no bearing on the commission of the crime charged.

In this connection the State contends even if it is determined the cross-examination was impermissibly broad with respect to defendant's direct testimony it was appropriate as an attack on defendant's credibility. The State relies on the following statements of this court:

" * * * We have repeatedly held admissibility of specific acts of misconduct on cross-examination to attack credibility is within trial court's discretion and will be disturbed only when such discretion has been abused. * * * [citing authorities]." State v. Crawford, 202 N.W.2d 99, 104 (Iowa 1972).

In State v. Harrington, 178 N.W.2d 314, 316 (Iowa 1970), it is said:

" * * * Section 781.13 which provides cross-examination by the State of a defendant shall be strictly confined to matters testified to on direct examination, does not place him on a different footing than any other witness with respect to his memory, history, motive or matters affecting his credibility. A defendant who offers himself as a witness subjects himself to the same rules on impeachment and credibility as other witnesses. The extent to which cross-examination of a defendant may be pursued is largely a matter of the trial court's discretion and its ruling will be disturbed only upon a clear showing that such discretion has been abused."

The same principle is recognized in *State v. Allnutt*, 261 Iowa 897, 909, 156 N.W.2d 266, 273, in this fashion:

" * * * When defendant elected to testify, his credibility as a witness became important. He cannot escape cross-examination to test that credibility. * * * [citing authority]."

▌ The law recognizes five surviving lines of attack upon the credibility of a witness. One of those is to show a defect in his capacity to observe, to remember or recount the matters testified about. *State v. Peterson*, 219 N.W.2d 665, 671 (Iowa 1974); *State v. Harvey*, 242 N.W.2d 330, 336 (Iowa 1976). In pursuing this line of attack the cross-examiner's questions are not generally limited to matters brought out in the direct examination. See McCormick on Evidence, (Second Ed.), section 22.

In our opinion it is defendant's credibility rather than her competency as a witness which the State sought to attack by the questions propounded on cross-examination. We are aware, as noted in McCormick on Evidence, (Second Ed.), section 61, page 139, that "the common law rules of incompetency have been undergoing a process of piecemeal revision by statutes for over a century, so that today most of the former grounds for excluding a witness altogether have been converted into mere grounds for impeaching his credibility."

Nevertheless, the author of the annotation in 65 A.L.R.3d 705, 716, tells us "it has been acknowledged that the trend of the law in recent years has been to turn away from rigid rules of incompetence, in favor of admitting testimony and allowing the trier of fact to judge the weight to be given it. This general trend is exemplified by the following cases in which the court held or recognized that drug use per se does not render a witness incompetent to testify." Then follows a list of cases from 14 state jurisdictions and several federal circuit court decisions.

Thus as we view it, the State's contention urged in support of the trial court's ruling presents the question whether the use of drugs by a defendant in a criminal case may be inquired into on cross-examination for the purpose of discrediting the accused as a witness.

The four specific questions giving rise to defendant's assertion the State's cross-examination of defendant exceeded the bounds established by section 781.13 have been set out earlier.

▌ A determination of the issue stated as stemming from the State's contention is limited in this court to a consideration of the second and fourth of those questions. Any alleged error in the trial court's ruling in regard to the first and third of those questions was not preserved for review. In both instances objections were made after answer. No motion to strike was made; no application to have the objection precede either of these answers was urged; and there was no excuse offered for tardiness in objecting. Defendant's answers to those two questions consequently remain in the record for jury consideration. *State v. Hendren*, 216 N.W.2d 302, 305 (Iowa 1974); *State v. Hinkle*, 229 N.W.2d 744, 748 (Iowa 1975).

The trial transcript discloses Joleen Hass testified she told the Ivorys she was to meet a friend at the Palmer House in Sioux City upon their return from Omaha. When they arrived at this destination they parked in a dark spot behind the Palmer House. As stated, the undercover agent claims that

before leaving the Ivory car she gave the Ivorys a small amount of the heroin purchased in Omaha. Hass stated defendant went into the Palmer House, got some water and returned to the car where she and her husband fixed up some in a spoon "to run up." When asked what she meant by "fixed up in a spoon" Hass described in some detail the steps taken by the Ivorys in preparation before "Janice did it in her hand and Geames [Mr. Ivory] did it in his arm." Joleen testified she saw the Ivorys do this.

We point out again that defendant on direct examination had denied selling or delivering or taking part in the sale or delivery of any drugs and/or heroin of any kind to Joleen Hass on or about October 2, 1974.

The problem presented by this appeal does not involve any contention drug use per se renders a witness incompetent to testify. Furthermore, there is no assertion defendant was under the influence of drugs at the time of testifying.

Rather, the first question to be answered is whether an accused who testifies in his own behalf may be cross-examined in regard to his possible use of drugs at the time of the occurrence to which he testified on the theory use of drugs could potentially affect the witness's capacity to accurately observe or relate details of the events which he had seen and is therefore a proper matter for consideration by the jury in arriving at their verdict.

As pointed out earlier, it is well settled that one of the proper methods of attack upon the credibility of a witness is to show a defect in his capacity to observe, to remember or recount the matters testified about. See *State v. Peterson*, 219 N.W.2d at 671 and *State v. Harvey*, 242 N.W.2d at 336.

■ It is our opinion evidence of drug use which would substantially lessen or temporarily impair the ability to perceive the facts which the witness purports to have observed is provable to attack the credibility of the witness under the forego-

ing method of attack. See McCormick on Evidence, (Second Ed.), section 45, n. 2, citing *State v. Miskell*, 161 N.W.2d 732 (Iowa 1968); 3A Wigmore on Evidence, (Chadbourn Rev.), sections 931–934. An accused becoming a witness in his own behalf stands on the same footing as any other witness in regard to matters affecting his credibility. *State v. Broten*, 176 N.W.2d 827, 829 (Iowa 1970).

Decisions from several state and federal jurisdictions which have held or recognized that evidence of drug use is admissible as tending to show the witness was under the influence of drugs either at the time of trial or at the time of the occurrence as to which the witness testifies are collected in the annotation in 65 A.L.R.3d at 720–723.

■ The next problem to determine is whether either of the challenged questions asked defendant on cross-examination was proper in light of the foregoing rules. Neither question sought to adduce evidence tending to show defendant was under the influence of drugs on the night of the alleged delivery of the heroin. Both were timely objected to as irrelevant to any issue in the case.

In *State v. Hopkins*, 192 N.W.2d 747, 752 (Iowa 1972), this court stated:

"McCormick suggests 'that the most acceptable test of relevancy is the question, does the evidence offered render the desired inference *more probable than it would be without the evidence?*' (Emphasis in the original). See McCormick on Evidence, section 152."

Relevant evidence is also defined in both rule 401, Federal Rules of Evidence, and rule 401, Uniform Rules of Evidence, in these words:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

In order to meet this objection it is necessary that evidence bearing on defendant's drug use had a tendency to establish her

ability to accurately observe or relate details of the events of October 1 and 2, 1974, had been substantially lessened or temporarily impaired by such drug use.

It is our opinion the objections to the relevancy of the questions under consideration should have been sustained. The trial court abused its discretion in ruling otherwise. Hence, a reversal is required. See section 793.21, The Code.

■ II. Defendant contends the trial court erred in failing to grant her belated request for an accommodation hearing.

Defendant was convicted October 9, 1975, and sentenced October 27.

*State v. Monroe*, 236 N.W.2d 24 (Iowa 1975), which places upon the State the burden to prove beyond a reasonable doubt the delivery was not for accommodation only and also mandates the issue must be submitted to a jury, was decided November 24.

Upon retrial, in the event of a conviction, any accommodation hearing requested in accordance with *State v. Still*, 208 N.W.2d 887, 894 (Iowa 1973), must be conducted according to *Monroe*.

For the reasons stated in division I, the case is—Reversed.

All Justices concur, except REES, J., who takes no part.